CALIFORNIANS FOR SAFE AND COMPETITIVE DUMP TRUCK TRANSPORTATION; Lindeman Brothers, Inc.; Yuba Trucking, Inc., Plaintiffs–Appellants,

v.

Roberta E. MENDONCA; Lloyd W. Aubry, Jr.; James W. Van Loben Sels; California Department of Transportation; California Department of Industrial Relations; California Department of Labor, Defendants–Appellees,

and

International Brotherhood of Teamsters, AFL–CIO, Intervenor–Defendant–Appellee.

No. 97–16026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1998.

Decided Aug. 21, 1998.

---

Ellis Ross Anderson, Anderson, Donovan & Poole, San Francisco, California, for plaintiffs-appellants.

Miles E. Locker, Department of Industrial Relations, Irene B. Moy, Department of Transportation, San Francisco, California, for defendants-appellees.

Mary Lynne Werlwas, Scott A. Kronland, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California, for intervenor-defendant-appellee.

Before: SNEED and TROTT, Circuit Judges, and WALLACH,* Judge.

SNEED, Circuit Judge:

The issue before us is whether the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501 et seq. ("FAAA Act") preempts enforcement of California's Prevailing Wage Law, Cal. Lab.Code §§ 1770–80 ("CPWL"). We hold that it does not do so.

The language and structure of the FAAA Act does not evidence a clear and manifest intent on the part of Congress to preempt the CPWL. Although CPWL is not entirely unrelated "to a price, route or service of . . . motor carriers," the teachings of recent Supreme Court cases make clear that a state law dealing with matters traditionally within its police powers, and having no more than an *indirect, remote, and tenuous* effect on motor carriers, are not preempted. Such is the case here. Thus, we affirm the district court's dismissal of plaintiffs' complaint.

* Honorable Evan J. Wallach, Judge of the United States Court of International Trade, sitting by designation.

## I.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Californians for Safe & Competitive Dump Truck Transportation, Lindeman Brothers, Inc. and Yuba Trucking, Inc. (collectively "Dump Truck")[1] are public works contractors who provide transportation-related services on publicly-funded projects within California. The defendants (collectively "Mendonca") are several California agencies and their agents in whom the State of California vests the statutory authority to enforce CPWL.

Since 1937, when CPWL was enacted, California has required contractors and subcontractors who are awarded public works contracts to pay their workers "not less than the general prevailing rate ... for work of a similar character in the locality in which the public work is performed." *See* Cal. Lab. Code § 1771.[2] Failure to pay prevailing wages results in the assessment of penalties against the contractor. *See* Cal. Lab.Code § 1775. Mendonca assessed Dump Truck various penalties after it failed to pay its workers the prevailing wage.

On September 20, 1996, Dump Truck filed suit in the district court seeking both declaratory and injunctive relief. Dump Truck claimed that enforcement of CPWL violated the Supremacy Clause because the FAAA Act preempted CPWL. Jurisdiction was based on the existence of federal questions and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

On October 18, 1996, Mendonca filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and, in late 1996, the International Brotherhood of Teamsters ("IBT") sought leave to intervene as a defendant. Dump Truck opposed both motions. The district court granted IBT's motion to intervene and, thereafter, granted Mendonca's motion to dismiss after the district court concluded that CPWL was not preempted. The district court entered final judgment, and Dump Truck timely appeals the district court's ruling on the preemption issue as well as its decision to grant IBT's motion to intervene.

## II.

### JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction over this appeal under 28 U.S.C. § 1291. A district court's decision regarding preemption is reviewed de novo. *Gee v. Southwest Airlines*, 110 F.3d 1400, 1404 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997).

## III.

### DISCUSSION

*Part I: The District Court's Dismissal of the Complaint*

Dump Truck contends that the plain meaning of the FAAA Act's preemption clause, the intent of Congress, and the Supreme Court's "broad interpretation" of the ADA's preemption clause, compel a conclusion that the FAAA Act preempts CPWL. Dump Truck therefore asserts that the district court erred by dismissing its complaint under Fed. R.Civ.P. 12(b)(6).

■ We commence with the assumption that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The Supreme Court has indicated that CPWL is an example of state action in a field long regulated by the states. *See California Div.*

---

**1.** Plaintiff Californians for Safe & Competitive Dump Truck Transportation is a nonprofit association of approximately eleven individuals and entities operating as motor carriers in California or utilizing the transportation services of motor carriers. Plaintiffs Lindeman Brothers, Inc. and Yuba Trucking, Inc. are motor carrier enterprises incorporated in California which are engaged in the transportation of property in intrastate and interstate commerce.

**2.** The CPWL essentially adopted the provisions of the 1931 Davis–Bacon Act, 46 Stat. 1494, as amended, 40 U.S.C. §§ 276a to 276a—5, which required that wages paid on federal public works projects equal wages paid in the project's locale on similar, private construction jobs.

*of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 835, 840, 136 L.Ed.2d 791 (1997). Thus, the crux of this case is whether Congress exhibited a clear and manifest intent to preempt CPWL.

Nonetheless, to determine Congressional intent, we first must consult the text of the FAAA Act, as well as its structure and purpose. We are mindful of the Supreme Court's admonition that "preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

### 1. The Text of the FAAA Act

On January 1, 1995, Section 601 of the FAAA Act became federal law. As a general matter, this section preempts a wide range of state regulation of intrastate motor carriage. It provides:

> (c) Motor carriers of property. (1) General Rule. Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision *having the force and effect of law related to a price, route, or service of any motor carrier* ... with respect to the transportation of property.

49 U.S.C. § 14501(c)(1)(1997) (emphasis added). Paragraphs (2) and (3) exempt a number of types of state regulations and controls. *See* 49 U.S.C. § 14501(c)(2), (3). None of the exemptions, however, apply here. Beyond this, the text offers little else in the way of definition or direction as to the FAAA Act's preemptive scope.

### 2. The Legislative History of the FAAA Act

Congress apparently regarded the preemption clause of the FAAA Act as a way of solving two major problems facing inter-

state commerce. First, Congress believed that across-the-board deregulation was in the public interest as well as necessary to eliminate non-uniform state regulations of motor carriers which had caused "significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology, and curtail[ed] the expansion of markets." H.R. Conf. Rep. No. 103–677, at 86–88 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1758–60.

Second, by enacting a preemption provision identical to an existing provision deregulating air carriers (the Airline Deregulation Act ("ADA")), Congress sought to "even the playing field" between air carriers and motor carriers. *Id.* at 85, 1994 U.S.C.C.A.N. at 1757, 1759. This imbalance arose out of this court's decision in *Federal Express Corp. v. California Pub. Utils. Comm'n,* 936 F.2d 1075 (9th Cir.1991). By holding that Federal Express fit within the ADA's definition of "air carrier," this court concluded that California's intrastate economic regulations of the carrier's shipping activities were preempted. As a result, air-based shippers gained a sizeable advantage over their more regulated, ground-based shipping competitors. By preempting the states' authority to regulate motor carriers, Congress sought to balance the regulatory "inequity" produced by the ADA's preemption of the states' authority to regulate air carriers. *See* H.R. Conf. Rep. No. 103–677, at 87 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1759.

It is revealing to note that Congress identified forty-one jurisdictions which regulated intrastate prices, routes and services, followed by ten jurisdictions which did not regulate in these areas. *See* H.R. Conf. Rep. 103–677, at 86 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1758. Of the ten jurisdictions which Congress found *did not* regulate intrastate prices, routes and services, seven of these jurisdictions had, and continue to have, general prevailing wage laws substantially similar to CPWL.[3]

---

**3.** The seven jurisdictions with prevailing wage laws similar to the CPWL are: Alaska, Delaware, the District of Columbia, Maine, Maryland, New Jersey, and Wisconsin. *See, e.g.,* Alaska Stat. § 386.05.010 et seq. (Michie 1996); Del.Code Ann. tit. 29, § 6960 (1997); 40 U.S.C. § 276(a)

(1994) (making the Davis–Bacon Act applicable to the District of Columbia); Me.Rev.Stat. Ann. tit. 26, § 1304 (West 1997); Md.Code Ann., State Finance and Procurement § 17–201 (1997); N.J. Stat. Ann. § 11–56.26 (West 1997); Wis. Stat. § 66.293 (West 1998).

This portion of the legislative history constitutes indirect evidence that Congress did not intend to preempt CPWL. This perception is reinforced by the absence of any *positive* indication in the legislative history that Congress intended preemption in this area of traditional state power. *See Travelers,* 514 U.S. at 655, 115 S.Ct. 1671.

### 3. *Recent Cases Interpreting the "Related To" Language*

While this legislative history counsels against preemption in this case, we draw additional support from recent Supreme Court cases interpreting the preemptive scope of the ADA and ERISA preemption clauses. To repeat, these cases instruct that state regulation in an area of traditional state power having no more than an indirect, remote, or tenuous effect on a motor carriers' prices, routes, and services are not preempted.

The Supreme Court's first encounter with the ADA's preemption clause was *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). There the Court held that a state law may "relate to" the ADA, and therefore run afoul of the ADA's preemption clause, even though such law has only an indirect effect on the rates, routes, or services of an air carrier. *See id.* at 385–86, 112 S.Ct. 2031.[4] It was acknowledged, however, that some state action may affect an air carrier's fares in "too tenuous, remote, or peripheral a manner" to have preemptive effect. *Id.* at 390, 112 S.Ct. 2031 (citation omitted). Moreover, *Morales* "express[ed] no views about where it would be appropriate to draw the line." *Id.*[5]

In *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Court again confronted the issue of where to draw the line in interpreting the ADA's preemptive scope. Although the two minority opinions in *Wolens* advocated either "minimal preemption" or "total preemption,"

*see id.* M 234, the majority took the "middle course" and held that state action was preempted to the extent that it imposed its substantive standards on the prices, routes, or services of an air carrier. *See id.* at 232, 115 S.Ct. 817. The majority further held that the ADA's preemption clause did not bar states from enforcing contract terms which the airline had voluntarily undertaken. *Id.* at 232–33, 115 S.Ct. 817. While adhering to its holding in *Morales,* the Court recognized that "principles seldom can be settled on the basis of one or two cases, but require a closer working out." *Id.* at 234–35, 115 S.Ct. 817 (citation omitted).

In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), a unanimous Supreme Court read the *Morales* ruling narrowly, and held that traditional state regulation having no more than an *indirect effect* on ERISA plans were not "related to" such plans within the meaning of ERISA's preemption clause. *See id.* at 661–62, 115 S.Ct. 1671. The Court acknowledged, however, that a state law might produce "acute, albeit indirect, economic effects . . . that such a state law might indeed be preempted. . . ." *Id.* at 668, 115 S.Ct. 1671.

In *California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the Supreme Court confronted an ERISA preemption challenge to CPWL based on the contention that it "related to" and had a "connection with" ERISA plans because CPWL increased costs of providing certain benefits, thereby affecting the choices made by ERISA plans. *See id.* 519 U.S. at ——, 117 S.Ct. at 840. Rejecting this argument, a unanimous Court held that it "could not hold pre-empted a state law in an area of traditional state regulation based on so *tenuous* a relation" to ERISA plans. *See id.* 519

---

**4.** In *Morales,* the Court referred to the preemption test found in ERISA's preemption clause "[s]ince the relevant language of the ADA is identical. . . ." *Morales,* 504 U.S. at 384, 112 S.Ct. 2031. The Court thus adopted ERISA's preemption test and declared that "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services'

are preempted under 49 U.S.C.App. § 1305(a)(1)." *Id.*

**5.** In the FAAA Act's legislative history, Congress endorsed the "broad preemption interpretation" adopted by the Court in *Morales. See* H.R. Conf. Rep. 103–677, at 83 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1755.

U.S. at ——, 117 S.Ct. at 842 (emphasis added). In determining whether the a state law had the forbidden connection, the Court looked to

> the *objectives* of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the *effect* of the state law on ERISA plans.

*Dillingham,* 519 U.S. at ——, 117 S.Ct. at 838 (citation omitted) (emphasis added).

Clearly the Court in these cases is attempting to preserve the proper and legitimate balance between federal and state authority. Of particular note is Justice Scalia's concurrence in *Dillingham.* He stressed that the Court's "first take on this statute was wrong" and that the " 'relate to' clause of the preemption provision is meant, not to set forth a *test* for preemption, but rather to identify the field in which ordinary *field preemption* applies...." *Id.* 519 U.S. at ——, 117 S.Ct. at 843 (emphasis in original). Justice Scalia further stated that "applying the 'relate to' provision according to its terms was ... doomed to failure, since ... everything is related to everything else." *Id.*

### 4. CPWL is not "Related To" Prices, Routes or Services

■ It is against the backdrop of *Dillingham, Travelers,* and *Wolens* that we now confront Dump Truck's preemption argument. Dump Truck contends that the FAAA Act preempts CPWL because it directly affects, and therefore is "related to," the prices, routes, and services of Dump Truck's motor carrier enterprises. It argues that CPWL increases its prices by 25%, causes it to utilize independent owner-operators, and compels it to re-direct and re-route equipment to compensate for lost revenue. As proof of these assertions, Dump Truck alleges that its rates for "services" are based on: (1) costs, including cost of labor, permits, insurance, tax and license; (2) performance factors; and (3) conditions, *including prevailing wage requirements.*

While CPWL in a certain sense is "related to" Dump Truck's prices, routes and services,

we hold that the effect is no more than indirect, remote, and tenuous. *See Dillingham,* 519 U.S. at ——, 117 S.Ct. at 842. We do not believe that CPWL frustrates the purpose of deregulation by *acutely* interfering with the forces of competition. *See Travelers,* 514 U.S. at 668, 115 S.Ct. 1671. Nor can it be said, borrowing from Justice Scalia's concurrence in *Dillingham,* that CPWL falls into the "field of laws" regulating prices, routes, or services. *See Dillingham,* 519 U.S. at ——, 117 S.Ct. at 843.[6] Accordingly, we hold that CPWL is not "related to" Dump Truck's prices, routes, and services within the meaning of the FAAA Act's preemption clause. The FAAA Act thus does not preempt CPWL.

### Part II: The Granting of IBT's Motion to Intervene

■ Dump Truck also contends that the district court erred by granting IBT's motion to intervene as of right because, in Dump Truck's view, IBT failed to meet the test for intervention under Fed.R.Civ.P. 24(a). We disagree.

■ A district court's decision concerning intervention as of right pursuant to Fed.R.Civ.P. 24(a) is reviewed de novo. *See Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993). We apply a four-part test under Fed.R.Civ.P. 24(a):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1493 (9th Cir.1995) (citation omitted).

Here, IBT satisfied each of the elements of Rule 24(a). First, it is uncontested that IBT timely sought to intervene. Second, its

---

6. The test for ordinary "field preemption" was set forth in *Rice v. Santa Fe Elevator Corp.,* 331 U.S. at 236, 67 S.Ct. 1146 (test is whether Congress has declared it policy with respect to the matter on which the state asserts the right to act). To repeat, nowhere in the FAAA Act do we find any mention of Congress's intent to occupy the field of general prevailing wage laws.

members had a "significant interest" in receiving the prevailing wage for their services as opposed to a substandard wage. Moreover, California's law guaranteeing prevailing wages, the CPWL, was the subject of Dump Truck's preemption suit. Third, in the event Dump Truck prevailed, it would have clearly impaired IBT's members' right to receive the prevailing wage. Fourth, because the employment interests of IBT's members were potentially more narrow and parochial than the interests of the public at large, IBT demonstrated that the representation of its interests by the named defendants-appellees may have been inadequate. *See Id.* Accordingly, the district court did not err by granting IBT intervention as of right.

## IV.

### *CONCLUSION*

The district court's judgment dismissing Dump Truck's complaint under Fed.R.Civ.P. 12(b)(6) is affirmed. Additionally, the district court's decision granting IBT's motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a) is affirmed.

**AFFIRMED.**