******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MODZELEWSKI'S TOWING AND RECOVERY, INC. *v.*
COMMISSIONER OF MOTOR VEHICLES
(SC 19453)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued January 20—officially released July 12, 2016*

*Drew S. Graham*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general, for the appellant (defendant).

*Kenneth A. Votre*, with whom was *Richard E. Fennelly III*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The principal issue in this administrative appeal is whether state laws regulating the fees charged for certain services provided in the course of the nonconsensual towing of a motor vehicle are preempted by federal law. The defendant, the Commissioner of Motor Vehicles (commissioner), appeals from the judgment of the trial court reversing in part the decision of the Department of Motor Vehicles (department) that Connecticut's statutes and regulations regarding nonconsensual towing services are not preempted under 49 U.S.C. § 14501 (c) (2) (C) (2012)[1] and that the plaintiff, Modzelewski's Towing and Recovery, Inc., had overcharged for the nonconsensual towing of a motor vehicle trailer and must pay restitution in the amount of $12,787 to the trailer's insurer. On appeal to this court, the commissioner claims that the trial court incorrectly determined that the fees charged by the plaintiff for the use of a 1075 rotator truck for recovery of the damaged trailer prior to the actual towing, for towing recovery operations, generally, for the use of its major incident response truck during the recovery operation, and for services performed in connection with the storage of a damaged vehicle following a nonconsensual towing are not subject to state regulation. The plaintiff responds that, when a towing is nonconsensual, federal law authorizes the state to regulate only the fee charged for the actual towing and that the state cannot regulate storage rates incident to the towing. The plaintiff also argues that, if this court concludes that the fees charged for recovery services are not subject to state regulation, it cannot review whether the trial court properly reinstated charges for the plaintiff's use of the major incident response truck. We agree with the commissioner and reverse in part the judgment of the trial court.

I

FACTS

The following undisputed facts are set forth in the trial court's memorandum of decision. "On September 8, 2011, [the] state police called the plaintiff, a towing and recovery services company, to the scene of an accident on Interstate 84 near Newtown. The accident occurred when a passenger vehicle struck the rear of a trailer that was carrying a twenty-eight foot power boat and was hitched to a pick-up truck. As a result of the crash, the boat shifted position, and the trailer became unsafe.

"At the accident scene, the plaintiff used a '1075' unit to pick up the front of the boat and restrap it to the trailer. The plaintiff next disconnected the trailer from the truck, removed the trailer and boat from the highway, and used the 1075 machine to place the trailer and boat on a [low bed] tractor trailer. The final phase that day involved the plaintiff's transport of the trailer

and boat to its facility in Newtown for storage and further police investigation.

"On September 9, [the] police conducted an inspection of the trailer and boat. The inspection required the plaintiff to lift the trailer with a warehouse forklift in order to place and then remove scales underneath it for the purpose of [weighing the trailer and boat]. The combined weight classification of the trailer and boat unit was between 10,000 and 26,000 pounds.

"The plaintiff charged Eric Unser, the owner of the boat and trailer, $14,732.50 for its services on September 8 and 9. Unser's insurer, Boat U.S. Marine Insurance, paid the bill on behalf of [Unser].

"On October 11, 2011, Unser filed a complaint with the department . . . claiming that he was overcharged. The department held a hearing on October 2, 2012. Relying on department regulations governing charges allowed for nonconsensual, 'medium duty' towing, the hearing officer ruled that the plaintiff had overcharged Unser and Boat U.S. Marine [Insurance] in the amount of $12,787. . . .

\* \* \*

"The restitution order of $12,787 represented the difference between the total charged by the plaintiff ($16,699.50) and the total allowed by the department ($3912.50). The hearing officer rejected the plaintiff's claim that federal statutes preempt the department's regulations. The [hearing] officer held that '[t]ransportation of a motor vehicle as set forth in 49 U.S.C. § 14501 (c) (2) (C) contemplates a process intended to accomplish an end and cannot be limited by focusing on one aspect, i.e. "tow truck," as suggested by the [plaintiff].'

"Accordingly, the hearing officer ordered the plaintiff to pay Boat U.S. Marine [Insurance] restitution of $12,787 within thirty days of the decision. The [hearing] officer also ruled that, if the plaintiff failed to comply, the department would disqualify the plaintiff's license, seek recovery from the plaintiff's repairer bond, and impose a civil penalty of $1125 prior to any license reinstatement."

The plaintiff appealed to the trial court, which sustained the appeal in part. The court first concluded that the damaged trailer qualified as a "motor vehicle" and that the low bed tractor trailer used to transport the damaged vehicle qualified as a "tow truck" within the meaning of 49 U.S.C. §§ 13102 (16) and 14501 (c) (2) (C), respectively, of the federal preemption scheme. The court thus concluded that "the actual towing component of this case involved a nonconsensual 'for-hire motor vehicle transportation by a tow truck' under [49 U.S.C. § 14501] (c) (2) (C)" and that the commissioner had authority to regulate the rate that the plaintiff charged for that service, the cost of which the hearing officer had disallowed entirely.

The trial court next concluded, however, that the commissioner did not have authority to regulate the fees charged for the plaintiff's pretowing recovery and posttowing services. The pretowing recovery services included the plaintiff's use of the 1075 rotator truck, the major incident response truck and the heavy duty recovery straps for the purpose of repositioning the vehicle on the trailer to ensure its stability. The posttowing services included storage of the trailer and related warehouse operations.[2] The court determined that state regulation governing pretowing and posttowing services is preempted by federal law, and, therefore, the plaintiff was not required to refund payments made by the insurer for these services.

Thereafter, the commissioner appealed[3] from the trial court's judgment, claiming that state regulation of pretowing and posttowing services is not subject to federal preemption. Oral argument was heard on January 20, 2016, in conjunction with *Raymond's Auto Repair, LLC* v. *Commissioner of Motor Vehicles* (SC 19454), in which the commissioner raised a similar claim regarding pretowing recovery services. On January 26, 2016, we ordered the parties to address the following question in supplemental briefs: "Does 49 U.S.C. § 14501 (c) (1), which prohibits state[s] and political subdivisions thereof from enacting or enforcing any law related to a price, route, or service of any motor carrier *with respect to the transportation of property*, apply to 'pretowing services' (as defined in the trial court's [memorandum of decision]) or 'posttowing services'?" (Emphasis in original.)

## II

### STANDARD OF REVIEW

We begin with the standard of review. Ordinarily, "[j]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and . . . [o]ur ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference . . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, [statutory] construction and interpretation

[of federal preemption law] . . . our review is de novo. . . . We are also compelled to conduct a de novo review because the issue of statutory construction before this court has not yet been subjected to judicial scrutiny." (Citation omitted; internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 803–804, 942 A.2d 305 (2008). Mindful of these principles, we consider the applicable federal law.

### III

### FEDERAL PREEMPTION LAW

### A

### Relevant Statutory Provisions

"The Interstate Commerce Act, as amended by the Federal Aviation Administration Authorization Act of 1994, [Pub. L. No. 103-305, § 601] 108 Stat. [1569, 1606], and the [Interstate Commerce Commission] Termination Act of 1995, [Pub. L. No. 104-88] 109 Stat. [803] 899, generally preempts state and local regulation 'related to a price, route, or service of any motor carrier . . . with respect to the transportation of property' . . . ." *Columbus* v. *Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 429, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002). The general rule contained in 49 U.S.C. § 14501 (c) (1) provides: "Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." Of the three exceptions set forth in subdivision (2) of 49 U.S.C. § 14501 (c), only the third exception is at issue in the present case.[4] That exception provides as follows: "[Section 14501 (c) (1)] . . . does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501 (c) (2) (C) (2012). In the present case, the parties do not dispute that the plaintiff's actions were "performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501 (c) (2) (C) (2012). The commissioner instead challenges the trial court's conclusion that the department lacks authority under 49 U.S.C. § 14501 (c) (2) (C) to regulate[5] the fees charged for the plaintiff's pretowing and posttowing services because of the court's determination that they do not fall within the meaning of "transportation by a tow truck . . . ." 49 U.S.C. § 14501 (c) (2) (C) (2012).

### B

### Rules of Construction

In construing the language used in 49 U.S.C. § 14501 (c) (2) (C), we recognize that "[t]he [s]upremacy [c]lause of the [United States] [c]onstitution declares that the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const., art. VI, cl. 2. As a consequence, state and local laws are preempted [when] they conflict with the dictates of federal law, and must yield to those dictates. . . . Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. . . .

"[When], as with 49 U.S.C. § 14501 (c), a federal statute expressly preempts state or local law, analysis of the scope of the [preemption] statute must begin with its text. . . . And, we must also start with the assumption that the historic police powers of the [s]tates [are] not to be superseded . . . unless that was the clear and manifest purpose of Congress. . . . As such, Congress' purpose is the ultimate touchstone of preemption analysis." (Citations omitted; internal quotation marks omitted.) *Ace Auto Body & Towing, Ltd.* v. *New York*, 171 F.3d 765, 771 (2d Cir.), cert. denied, 528 U.S. 868, 120 S. Ct. 166, 145 L. Ed. 2d 140 (1999).

C

History and Purpose of 49 U.S.C. § 14501 (c)

To understand the purpose of the federal preemption scheme, we briefly examine its history. In *Ace Auto Body & Towing, Ltd.*, the Second Circuit Court of Appeals explained: "Section 14501 (c) was originally enacted and codified at 49 U.S.C. § 11501 (h) [1994],[6] without the present exemption for the regulation of nonconsensual tow rates, by the Federal Aviation Administration Authorization Act of 1994 . . . . As such, [49 U.S.C.] § 11501 (h) (1) preempted state and local regulation of any 'price, route, or service of any motor carrier . . . with respect to the transportation of property,' and [49 U.S.C.] § 11501 (h) (2) (A) exempted state and local authority with respect to safety and financial responsibility regulations.

"The House Conference Report that accompanied the legislation indicates that the purpose behind [49 U.S.C.] § 11501 (h) (1) was to free the motor carrier industry from state and local regulation and to put that industry on a playing field level with that of the air carrier industry, which had already been deregulated by the Airline Deregulation Act of 1978 [Pub. L. No. 95-504, 92 Stat. 1705]. See [H.R. Rep.] No. 103-677, [pp.] 85, 87 (1994) [Conf. Rep.], reprinted in 1994 U.S.C.C.A.N. 1715, 1757, 1759. In so doing, Congress hoped to eliminate the competitive advantage air carriers, such as Federal Express, had enjoyed under decisions interpreting the 1978 statute, relative to motor carriers, like United Parcel Ser-

vice. See id. . . .

"The House Conference Report further clarifies that the exemptions from preemption under [49 U.S.C.] § 11501 (h) (2) (A) [regarding state and local safety regulations] simply reflect the fact 'that [s]tate authority to regulate safety, financial fitness and insurance . . . of motor carriers is unchanged since [s]tate regulation in those areas is not a price, route or service and thus is unaffected.' [H.R. Rep. No. 103-677, supra, p.] 85, reprinted in 1994 U.S.C.C.A.N. [1757]; see also [id., p.] 84, reprinted in 1994 U.S.C.C.A.N. [1756] . . . . The [r]eport nonetheless explicitly qualifies these exemptions, stating, '[t]he conferees do not intend for [s]tates to attempt to de facto regulate prices, routes or services of intrastate trucking through the guise of some form of unaffected regulatory authority.' Id. [p. 84, reprinted in 1994 U.S.C.C.A.N. 1756.]

"Just one year after its enactment, [49 U.S.C.] § 11501 (h) was recodified at 49 U.S.C. § 14501 (c) [Supp. I 1995]—with an added exemption for state regulation of nonconsensual tow rates—by the Interstate Commerce Commission Termination Act of 1995 . . . . The House Report that accompanied the legislation notes that the added provision 'struck a balance between the need to protect consumers from exorbitant towing fees and the need for a free market in towing services.' H.R. Rep. No. 104-311, [p.] 120, reprinted in 1995 U.S.C.C.A.N. [793], 832. Accordingly, the provision was 'not intended to permit [reregulation] of any other aspect of tow truck operations.' [Id., p.] 119, reprinted in 1995 U.S.C.C.A.N. [831]." (Citations omitted; footnote added.) *Ace Auto Body & Towing, Ltd.* v. *New York*, supra, 171 F.3d 772–73. With this historical context in mind, we turn to the commissioner's claims.

IV

PRETOWING RECOVERY SERVICES

The commissioner makes two related claims regarding pretowing recovery services provided in connection with a nonconsensual towing. The first claim is that the trial court incorrectly concluded that the plaintiff's use of a 1075 rotator truck for recovery of the damaged vehicle was not the use of a "tow truck" as contemplated under 49 U.S.C. § 14501 (c) (2) (C), and, therefore, the court improperly reinstated $3575 that the plaintiff charged for its use of the rotator truck during the recovery operation. The second claim is that the trial court incorrectly concluded that charges for towing recovery operations are not exempt from federal preemption under 49 U.S.C. § 14501 (c) (2) (C) because such a narrow reading of the statute conflicts with the broad reading federal courts have applied to the phrase "related to" in similar statutes. We consider these claims as one, however, because a determination that the charges for recovery operations, generally, are exempt

from federal preemption necessarily resolves the question of whether the plaintiff's charge for its use of the 1075 rotator truck during the recovery operation is subject to state regulation.

It is well established that when Connecticut courts interpret federal statutes, "[t]he decisions of the Second Circuit Court of Appeals carry particularly persuasive weight . . . ." *Webster Bank* v. *Oakley*, 265 Conn. 539, 555 n.16, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004). Thus, in order to determine whether the state regulation of pretowing recovery services is preempted by federal law, we turn initially to the Second Circuit's discussion of how broadly the preemption provision in 49 U.S.C. § 14501 (c) (1) should be read.

In construing the scope of this statute, which provides that any state or local law "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property" is preempted by federal law; 49 U.S.C. § 14501 (c) (1) (2012); the Second Circuit has looked to similar language in other statutes for guidance. See *Ace Auto Body & Towing, Ltd.* v. *New York*, supra, 171 F.3d 773 (citing *Californians for Safe & Competitive Dump Truck Transportation* v. *Mendonca*, 152 F.3d 1184, 1188–89 [9th Cir. 1998], cert. denied, 526 U.S. 1060, 119 S. Ct. 1377, 143 L. Ed. 2d 535 [1999], which construed "related to" language of 49 U.S.C. § 14501 [c] [1] by reference to cases interpreting similar language in other statutes). For example, the court in *Ace Auto Body & Towing, Ltd.*, noted that "[t]he House Conference Report to the [Federal Aviation Administration] Authorization Act explains that [49 U.S.C.] § 14501 (c) was 'intended to function in the exact same manner with respect to its preemptive effects' as 49 U.S.C. § 41713 (b) (4) [(A) (1994), concerning federal preemption of state and local authority over price, route or service of an air carrier], which contains similar 'related to' language. [H.R. Rep.] No. 103-677, [supra, p.] 85, reprinted in 1994 U.S.C.C.A.N. [1757]. The [United States] Supreme Court, in turn, has twice interpreted the predecessor of 49 U.S.C. § 41713 (b) (4) by reference to similar 'relate to' language in the Employee Retirement Income Security Act of 1974 (ERISA), [Pub. L. No. 93-406, 88 Stat. 829]." *Ace Auto Body & Towing, Ltd.* v. *New York*, supra, 773.

The Second Circuit then observed that it recently had determined that its "interpretation of the 'relate to' language of ERISA ultimately 'should be guided by common sense' "; id.; and that, applying its analysis of ERISA's preemption clause to 49 U.S.C. § 14501 (c) (1), "the broad 'related to' language of [49 U.S.C.] § 14501 (c) (1) generally preempts economic regulation by the states within the field of intrastate towing.[7] On the other hand, the statutory text, Congress' aim to leave the states' residual control over safety and other local con-

cerns intact, and the presumption against preemption of historic state police power, argue against finding preemption where only incidental economic burdens can be discerned." (Footnote added.) Id., 774. The court thus concluded, upon review of the safety exception in 49 U.S.C. § 14501 (c) (2) (A) and the relevant municipal regulations at issue in that case, that "the starting presumption against preemption of state law [had] not been overcome." Id.

Having reviewed this precedent, and consistent with "the presumption against preemption of historical state police power"; id.; we conclude that state laws regulating the fees charged for pretowing recovery services are not preempted under 49 U.S.C. § 14501 (c) (1) because they are "relat[ed] to the price of for-hire motor vehicle transportation by a tow truck" under 49 U.S.C. § 14501 (c) (2) (C) and have little or no effect on the federal goal of preserving a free market in towing services.

We begin our analysis by examining the relevant statutory language. As previously discussed, 49 U.S.C. § 14501 (c) (2) (C) provides that subsection (c) (1) "does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." The most significant term in this provision for purposes of the present appeal is "transportation" because, in the absence of any reference in the statute to recovery services, we must determine whether they may be construed to fall within the meaning of that term. "Transportation" is defined in 49 U.S.C. § 13102 (23) as including "(A) a motor vehicle . . . property . . . instrumentality, or equipment of any kind related to the movement of . . . property . . . and (B) services related to that movement . . . ." Even if we construe this definition narrowly, its plain language cannot be ignored. Recovery services provided in connection with the nonconsensual towing of a damaged vehicle are clearly covered by the term "transportation," as used in 49 U.S.C. § 14501 (c) (2) (C), because recovery services following an accident involve the use of equipment designed to create the conditions required for the actual towing to proceed. Thus, recovery services are not merely related to but are an integral part of the actual towing. There is no better example of this relationship than in the present case. Without the plaintiff's recovery services, which consisted of repositioning and securing the boat to the trailer and hoisting the damaged trailer onto the low bed tractor trailer for towing, it would have been impossible for the plaintiff to tow the damaged trailer from the accident scene. Accordingly, the definition of "transportation" in 49 U.S.C. § 13102 (23) supports the conclusion that state regulations relat-

ing to the price of recovery services provided in connection with a nonconsensual towing fall within the exception to federal preemption set forth in 49 U.S.C. § 14501 (c) (2) (C).

This interpretation of the statutory exception is not only reasonable, but does not upset the balance Congress sought to achieve between protecting consumers from exorbitant nonconsensual towing fees and the need for a free market in towing services. In *Dan's City Used Cars, Inc.* v. *Pelkey*, U.S. , 133 S. Ct. 1769, 185 L. Ed. 2d 909 (2013), the United States Supreme Court described federal preemption of motor carrier services as motivated by a concern that state regulation "impeded the free flow of trade, traffic, and transportation of interstate commerce . . . [by the state's] substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." (Citation omitted; internal quotation marks omitted.) Id., 1780. Congress thus sought to preempt state laws that "constrain participation in interstate commerce by requiring a motor carrier to offer services not available in the market"; id.; or that "freez[e] into place services that carriers might prefer to discontinue in the future." (Internal quotation marks omitted.) Id. In the present case, however, state regulation of the fees charged for recovery services in connection with a nonconsensual towing cannot be deemed to impede trade, transportation or interstate commerce, nor can it be viewed as constraining participation in interstate commerce by requiring a towing company to offer services unavailable in the market, or by freezing into place services tow truck operators no longer want to provide, because there is no free market to impede in a nonconsensual setting. Accordingly, state regulation of such fees "[is] not the kind of burdensome state economic regulation Congress sought to preempt"; (internal quotation marks omitted) id.; the need for recovery services being entirely dependent on the need for the towing itself, which clearly falls within the exemption from federal preemption set forth in 49 U.S.C. § 14501 (c) (2) (C).

Finally, construing 49 U.S.C. § 14501 (c) (2) (C) to preclude state regulation of fees charged for recovery services would be inconsistent "with the well established canon of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *Pictometry International Corp.* v. *Freedom of Information Commission*, 307 Conn. 648, 687–88, 59 A.3d 172 (2013). That is because separating two closely related parts of the towing process by allowing state regulation to prevent exorbitant fees for the actual towing but not for the recovery services that enable the towing to take place simply makes no sense, given the inextricable

relationship between recovery services and the actual towing. We therefore conclude that state laws regulating the fees charged for recovery services performed in connection with a nonconsensual towing are not preempted by federal law.[8]

In light of this conclusion, we also conclude that the fee charged by the plaintiff for the use of a 1075 rotator truck in the recovery operation falls within the exemption in 49 U.S.C. § 14501 (c) (2) (C) and is subject to state regulation. Accordingly, the trial court improperly reinstated the plaintiff's fee of $3575 for its use of a major incident response truck in the recovery operation.

The plaintiff argues that the preemption provision in 49 U.S.C. § 14501 (c) (1) was not intended to be read so narrowly, nor was the exemption provision in 49 U.S.C. § 14501 (c) (2) (C) intended to be read so broadly. Rather, the plaintiff contends that the legislative history demonstrates that 49 U.S.C. § 14501 (c) (2) (C) only permits state regulation of the price of the nonconsensual towing of the motor vehicle itself. The plaintiff relies on a House Report by the Committee on Transportation and Infrastructure, stating that 49 U.S.C. § 14501 (c) (2) (C) is "only intended to permit [s]tates or political subdivisions thereof to set maximum prices for [*nonconsensual*] *tows*, and is not intended to permit [reregulation] of *any other aspect of tow truck operations*." (Emphasis added.) H.R. Rep. No. 104-311, supra, p. 119, reprinted in 1995 U.S.C.C.A.N. 831. The plaintiff also relies on the following statement in the House Report: "The [c]ommittee had been asked to go farther and permit [s]tates and political subdivisions thereof to [reregulate] all aspects of [nonconsensual] tow truck services. The [c]ommittee provision struck a balance between the need to protect consumers from exorbitant towing fees and the need for a free market in towing services. Under the current provision, [s]tates and political subdivisions thereof would need to take affirmative action to regulate the prices of [nonconsensual] tow truck operations." Id., p. 120, reprinted in 1995 U.S.C.C.A.N. 832. We disagree with the plaintiff that the foregoing language in the House Report expresses a Congressional intent to limit state and local regulation to the fees charged for the towing itself.

There is no language in either passage in the House Report limiting the meaning of "nonconsensual tows," "nonconsensual tow truck operations" and "nonconsensual tow truck services" to the towing itself. More significantly, however, both passages refer to the fees charged for nonconsensual tow truck services as only one of several aspects of tow truck operations. See id., p. 119, reprinted in 1995 U.S.C.C.A.N. 831 (stating that 49 U.S.C. § 14501 [c] [2] [C] "is not intended to permit reregulation of *any other aspect* of tow truck operations" [emphasis added]); id., p. 120, reprinted in 1995

U.S.C.C.A.N. 832 (stating that "[t]he [c]ommittee had been asked to go farther and permit [s]tates and political subdivisions thereof to [reregulate] *all aspects* of [nonconsensual] tow truck services," but limiting exception to prices only [emphasis added]). The other aspects of tow truck operations or services to which the report refers were described by Representative Nick J. Rahall, Jr., on the floor of the House of Representatives during a debate on the proposed measure. He stated: "The pending legislation would restore the local authority to engage in regulating the prices charged by tow trucks in nonconsensual towing situations. *Regulation of routes and services*, as well as regulation of consensual towing, *would still be preempted*." (Emphasis added.) 141 Cong. Rec. H15602 (Daily Ed. December 22, 1995), remarks of Representative Rahall. Thus, when the House Report explained that Congress had been asked "to [reregulate] all aspects of [nonconsensual] tow truck services"; H.R. Rep. No. 104-311, supra, p. 120, reprinted in 1995 U.S.C.C.A.N. 832; but that Congress did "not [intend] to permit [state reregulation] of any other aspect of tow truck operations"; id., p. 119, reprinted in 1995 U.S.C.C.A.N. 832; the other aspects of tow truck operations and services to which the House Report referred did not consist of pretowing or posttowing services, as the plaintiff suggests, but of the routes tow trucks are allowed to travel and the services they are allowed to provide. The general rule of preemption in 49 U.S.C. § 14501 (c) (1) makes this same distinction. See 49 U.S.C. § 14501 (c) (1) (2012) ("[e]xcept as provided in [subdivisions (2) and (3)], a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a *price, route, or service* of any motor carrier . . . with respect to the transportation of property" [emphasis added]). Accordingly, the plaintiff's fixation on the words "tows" and "towing" in the House Report and during the floor debate as indicative of a distinction Congress allegedly intended between the fee charged for an actual towing, which state and local authorities would be permitted to regulate, and pretowing or posttowing services, which would remain subject to federal preemption, misses the point made in the House Report and on the floor of the House regarding "prices charged by tow trucks in nonconsensual towing situations." 141 Cong. Rec. H15602, supra, remarks of Representative Rahall. When the House Report spoke about striking "a balance between the need to protect consumers from exorbitant towing fees and the need for a free market in towing services"; H.R. Rep. No. 104-311, supra, p. 120, reprinted in 1995 U.S.C.C.A.N. 832; it was referring to the balance achieved by ceding price regulation of nonconsensual towing services to state and local regulatory authorities while maintaining federal control over the regulation of routes and services, and nothing more. We thus find no merit in the plaintiff's claim.[9]

The plaintiff also contends that construing 49 U.S.C. § 14501 (c) as permitting federal preemption of state laws regulating fees charged for pretowing recovery services would not subject consumers to potentially exorbitant fees because they may seek judicial resolution of disputes, and, in any event, consumers have insurance to protect themselves from having to pay exorbitant fees. The problem with these arguments is that relying on the courts to settle a dispute requires financial resources unavailable to many consumers, especially those with lower incomes, and insurance companies are likely to pass on any increased costs they may incur to their customers in the form of higher premiums. Moreover, there would be no incentive for towing companies to charge reasonable fees should state regulation of fees charged for nonconsensual recovery services be preempted by federal law. To the extent towing companies believe the rates established under state law are insufficient to cover their costs, state law permits them to petition the commissioner every two years for higher rates, and the commissioner shall reconsider and amend the rates and charges if it is determined that the rates and charges "are no longer just and reasonable." General Statutes § 14-66 (a) (2). We are therefore unpersuaded by the plaintiff's arguments.

V

POSTTOWING STORAGE SERVICES

The commissioner next claims that the trial court incorrectly concluded that federal law preempts state regulation of the fees charged for the storage of damaged vehicles following a nonconsensual towing. The plaintiff responds that the trial court correctly concluded that the state cannot regulate storage rates incident to a nonconsensual towing. In light of the following facts, we decline to review this claim.

The hearing officer found that, "[i]ncluded in the amount paid to the [plaintiff] was a storage fee in the amount of $1967, which was incurred primarily because [Boat U.S. Marine Insurance] disputed the tow fees prior to paying." Thus, because the dispute had extended the time that the damaged trailer and boat remained in storage to thirty-eight days, the hearing officer ordered that the storage fee be divided equally between the plaintiff and the insurer, even though the commissioner had not challenged the storage fee at the administrative hearing. Thereafter, in reviewing the plaintiff's claim that federal law preempts state regulation of storage fees, the trial court concluded that "[t]here is nothing in the plain language of the phrase 'transportation by a tow truck' [in 49 U.S.C. § 14501 (c) (2) (C)] that would include storage or operations at the warehouse the following day. Similarly, the department's regulations defining '[t]ow charge' arguably include some routine

posttow services such as cleaning of the equipment used to perform the towing or release of the vehicle to the owner, but they do not specifically encompass storage or warehouse operations." The trial court thus concluded that the state lacked authority to regulate the plaintiff's storage fee and ordered Boat U.S. Marine Insurance to pay the plaintiff the entire fee in the amount of $1967.

On appeal to this court, the commissioner does not challenge the trial court's order to restore the entire storage fee of $1967 but, rather, challenges the trial court's reasoning that state regulation of storage fees related to a nonconsensual towing is preempted under federal law. The commissioner argues that the plaintiff's storage of the damaged trailer for thirty-eight days following the tow was not related to its movement, and the vehicle was not in transit or on its way to a final destination. The plaintiff responds that the storage was temporary and that the trailer was still in transit because it was "undrivable" and needed to be towed to its final destination. The plaintiff thus contends that state regulation of storage fees is preempted under federal law.

We decline to review this claim because the commissioner challenges only the trial court's reasoning and not its order to restore the storage fee. The commissioner is therefore not aggrieved by the trial court's decision, and we do not express an opinion regarding the legal basis for the trial court's conclusion. See, e.g., *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91–92, 971 A.2d 1 (2009) ("It is axiomatic that aggrievement is a basic requirement of standing . . . . If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing . . . ." [Citations omitted; internal quotation marks omitted.]).

The judgment is reversed with respect to the trial court's determination that state regulation of fees charged for pretowing recovery services provided in connection with a nonconsensual towing is preempted by federal law, and the case is remanded with direction to recalculate its restitution order in accordance with this opinion and in light of the charges that the commissioner allowed with respect to the pretowing recovery services; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] Hereinafter, all references to the United States Code are to the 2012 edition unless otherwise noted.

[2] These included the use of the warehouse forklift to weigh the damaged trailer carrying the boat and the cost of labor to operate the forklift.

[3] The commissioner appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The first two exceptions relate to state safety regulations and the intrastate transport of household goods. See 49 U.S.C. § 14501 (c) (2) (A) (2012) (general rule "shall not restrict the safety regulatory authority of a State

with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization"); 49 U.S.C. § 14501 (c) (2) (B) (2012) (general rule "does not apply to the intrastate transportation of household goods").

[5] The state statutory provision on nonconsensual towing and the authority of the commissioner to adopt regulations to accomplish its objectives are not challenged by either party. General Statutes § 14-66 (a) provides in relevant part: "(2) The commissioner shall establish and publish a schedule of uniform rates and charges for the nonconsensual towing and transporting of motor vehicles and for the storage of motor vehicles which shall be just and reasonable. . . ." The commissioner has adopted a comprehensive regulatory scheme under the authority of § 14-66, entitled "Standards for Rates for Nonconsensual Towing or Transporting," which is codified at §§ 14-63-34 through 14-63-37b of the Regulations of Connecticut State Agencies.

[6] Hereinafter, all references to 49 U.S.C. § 11501 are to the 1994 revision.

[7] See, e.g., *Dan's City Used Cars*, *Inc.* v. *Pelkey*, U.S. , 133 S. Ct. 1769, 1778, 185 L. Ed. 2d 909 (2013) ("[The 'related to' language in 49 U.S.C. § 14501 (c) (1), like similar language in ERISA] embraces state laws having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly . . . [but] the breadth of the words related to does not mean the sky is the limit. We have refused to read the preemption clause . . . with an uncritical literalism, else for all practical purposes [preemption] would never run its course . . . [a]nd . . . cautioned that [49 U.S.C.] § 14501 [c] [1] does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral . . . manner." [Citations omitted; internal quotation marks omitted.]); *Morales* v. *Trans World Airlines*, *Inc.*, 504 U.S. 374, 383, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992) (construing "related to" language in the Airline Deregulation Act of 1978 and concluding that "[t]he ordinary meaning of these words is a broad one— to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary [(5th Ed. 1979) p. 1158]—and the words thus express a broad [preemptive] purpose" [internal quotation marks omitted]).

[8] This conclusion also answers the question the parties were asked to address in their supplemental briefs, namely, whether "49 U.S.C. § 14501 (c) (1), which prohibits state[s] and political subdivisions thereof from enacting or enforcing any law related to a price, route, or service of any motor carrier *with respect to the transportation of property*, appl[ies] to 'pretowing services' (as defined in the trial court's [memorandum of decision]) or 'posttowing services'?" (Emphasis in original.) As previously explained, 49 U.S.C. § 14501 (c) (2) (C) provides an exception to the general preemption provision in 49 U.S.C. § 14501 (c) (1) for nonconsensual towing services, which we have determined includes recovery services incident to a nonconsensual towing.

[9] We do not conduct a detailed analysis of the state's regulations because they shed no light on the meaning of the federal preemption scheme.