******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN P. COSTAS ET AL. *v.* COMMISSIONER
OF REVENUE SERVICES
(AC 44075)

Alvord, Cradle and Palmer, Js.

*Syllabus*

The plaintiff taxpayers, J and B, appealed to the trial court from the decision
of the defendant Commissioner of Revenue Services disallowing in part
their claims for certain income tax refunds. The plaintiffs resided in
Connecticut, but J performed services for his employer, U Co., in both
Connecticut and New York. As part of his compensation for those ser-
vices, J received stock options and restricted stock from U Co. For the
2005, 2007 and 2008 taxable years, the plaintiffs filed Connecticut resi-
dent income tax returns on which they reported compensation that J
had received from his exercise of stock options and the vesting of
restricted stock that U Co. previously had granted to him. They also
sought a credit for taxes paid to New York during those years for services
J performed for U Co. that occurred both in Connecticut and New York.
The commissioner allowed the credit pursuant to the applicable statute
(§ 12-704 (a)). Following an audit conducted in New York, the plaintiffs
paid additional taxes to New York for compensation that J had received
from U Co. for the 2005, 2007 and 2008 taxable years. The plaintiffs
filed amended Connecticut resident income tax returns for those years
and sought a credit for the additional taxes they paid to New York. The
commissioner disallowed in part the requested credit and the plaintiffs'
claims for refunds of the taxes paid to New York for the subject taxable
years on the ground that the plaintiffs were required to allocate income
from the exercise of stock options and the vesting of restricted stock
between Connecticut and New York in accordance with the relevant
state regulations (§§ 12-711(b)-17 (c) and 12-711(b)-18 (c)). In determin-
ing the apportionment and the credit to which the plaintiffs were entitled,
the commissioner applied the methodology set forth in those regulations,
which he construed as requiring a computation of the total compensation
received by J during the relevant periods, including deferred compensa-
tion that J received in those periods for services rendered prior thereto.
The plaintiffs had proposed an alternate methodology pursuant to the
relevant state regulation (§ 12-711(b)-15 (a)) that did not include
deferred compensation. The plaintiffs appealed to the trial court from
the commissioner's decision, claiming that the commissioner had misin-
terpreted §§ 12-711(b)-17 (c) and 12-711(b)-18 (c), and abused his discre-
tion in failing to utilize their alternate apportionment methodology
because the methodology that he applied resulted in an unfair and
inequitable allocation. The trial court rendered summary judgment in
favor of the commissioner, and the plaintiffs appealed to this court. *Held*:

1. The trial court and the commissioner correctly interpreted §§ 12-711(b)-
17 (c) and 12-711(b)-18 (c) of the regulations, as their construction was
mandated by the plain language of those regulations and did not yield
absurd or unworkable results: it was undisputed that the deferred com-
pensation at issue was received during the relevant periods, and, there-
fore, it fell squarely within the straightforward regulatory language
directing that the computation of credit shall include all of the compensa-
tion received during the relevant periods for the particular services
identified therein; moreover, although the plaintiffs claimed that the
regulations must be understood in the context of the broader regulatory
scheme and its overriding purpose and that their construction of the
regulations best achieved that goal, they failed to identify any language
in the regulations to substantiate their construction of those provisions,
and their belief as to how the regulatory purpose is best served did not
trump the plain and unambiguous language of the regulations, which
was determinative of their meaning.

2. The plaintiffs' alternative claim that the trial court incorrectly refused to
require the commissioner to exercise his discretionary authority under
§ 12-711(b)-15 (a) of the regulations to approve their proposed alternate
apportionment methodology was without merit; because the commis-

sioner correctly construed and applied §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) of the regulations, the resulting apportionment was presumptively fair and equitable under § 12-711(b)-15 (b), and the plaintiffs failed to overcome that presumption by establishing that the methodology set forth in §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) was so unfair and inequitable as applied to J that the commissioner was required to use their alternate apportionment methodology in determining the amount of their tax credit.

Argued October 5, 2021—officially released July 19, 2022

*Procedural History*

Appeal from the decision of the defendant disallowing in part the plaintiffs' claims for certain income tax refunds, brought to the Superior Court in the judicial district of New Britain, Tax Session, where the parties filed a joint stipulation of facts; thereafter, the court, *Hon. Arnold W. Aronson*, judge trial referee, granted the defendant's motion for summary judgment, denied the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Timothy P. Noonan*, for the appellants (plaintiffs).

*Patrick T. Ring*, assistant attorney general, with whom were *Joseph J. Chambers*, deputy assistant attorney general, and, on the brief, *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiffs, John P. Costas and Barbara S. Costas, appeal from the summary judgment rendered by the trial court in favor of the defendant, the Commissioner of Revenue Services (commissioner), sustaining the commissioner's assessment of taxes against the plaintiffs with respect to certain stock options and restricted stock units granted to John P. Costas by his employer as compensation for services he performed both in this state and in New York.[1] On appeal, the plaintiffs claim that the court incorrectly concluded that the commissioner was entitled to summary judgment because the court (1) misinterpreted and misapplied the regulations at issue, namely, §§ 12-711(b)-17[2] and 12-711(b)-18[3] of the Regulations of Connecticut State Agencies, which govern the credit to which a Connecticut taxpayer is entitled for taxes paid to another state on compensation derived from the vesting of restricted stock and the exercise of nonqualified stock options (stock options), respectively, for services performed in both Connecticut and that other state, and (2) refused to require that the commissioner approve an alternate apportionment methodology with regard to the income attributable to Connecticut and New York for purposes of determining the amount of those tax credits pursuant to § 12-711(b)-15[4] of the Regulations of Connecticut State Agencies.[5] We reject the plaintiffs' claims and, accordingly, affirm the judgment of the court.

The following uncontested facts, as set forth by the court, and procedural history are relevant to our resolution of this appeal. "Costas joined UBS [Investment Bank (UBS), formerly known as UBS Warburg] in 1996 as the Head of Fixed Income. In 2001, [he] assumed the role of [chief executive officer (CEO)] of . . . UBS . . . before being promoted to Deputy CEO of UBS in 2004. In 2005, [Costas] became CEO of UBS's Dillon Reed Capital Management, and he remained in that role until he left UBS in 2007. When [Costas] joined UBS in 1996, he was a resident of New Jersey and he performed services for UBS in New York. However, in 1998, [he] moved to Connecticut and, in doing so, moved his office from New York City to . . . Stamford . . . . [Following this move, Costas initially] did not spend any significant amount of time performing services in New York. Gradually, however, his time spent [performing services] in New York increased as follows: [between 1 and 2 percent in 2003, 10.22 percent in 2004, 29.11 percent in 2005, 66.29 percent in 2006, 60.22 percent in 2007, and 0 percent in 2008].

"As an executive of UBS, from 1998 through 2007, [Costas'] compensation package was comprised [primarily] of [deferred stock based compensation] . . . which had no readily ascertainable value at the time of grant.[6] Specifically, UBS granted [Costas] stock options

(the ability to purchase UBS stock at a fixed price after a period of vestment) and restricted stock (a grant of stock subject to a vesting schedule deemed received on the date of vestment)." (Footnote added; internal quotation marks omitted.) "[In] recognition that stock options and restricted stock [generally] have no reasonably ascertainable fair market value at the time awarded and, consequently, are not subject to taxation at the time they are granted [stock options are treated as taxable income when they are exercised and restricted stock is treated as taxable income upon vesting]."

"The plaintiffs . . . filed Connecticut resident income tax returns for each of the taxable years of 2005, 2007 and 2008, and, on each of these returns, the plaintiffs included compensation that [Costas] had received from his exercise of stock options and [the vesting of] restricted stock previously given to him [by UBS]. In filing their tax returns, the plaintiffs claim a credit for taxes paid to New York for services [Costas] performed for UBS . . . that occurred both in Connecticut and in New York." This credit was awarded pursuant to General Statutes § 12-704,[7] which permits a Connecticut resident to offset a credit for income taxes paid to other states "[i]n order for [the] taxpayer to avoid having to pay a double tax on the same services provided to his or her employer."

"Subsequently, the New York State Department of Taxation and Finance conducted an audit of the plaintiffs' tax returns and entered into an agreement with the plaintiffs whereby the plaintiffs agreed that they owed the state of New York additional tax on the compensation that [Costas] had received from UBS for the taxable years of 2005, 2007 and 2008. Following the payment of the additional taxes to New York, the plaintiffs filed amended Connecticut income tax returns for the taxable years of 2005, 2007 and 2008 in which they sought additional credits for these additional taxes paid to New York. . . . The [commissioner] disallowed part of the plaintiffs' claims for a refund of taxes paid to New York for the taxable years of 2005, 2007 and 2008 [on the ground] that the plaintiffs were required to allocate income from the exercise of stock options and vesting of restricted stock between Connecticut and New York in accordance with [§§ 12-711(b)-17 (c) and 12-711(b)-18 (c) of the Regulations of Connecticut State Agencies]."[8] (Footnote omitted.)

The parties acknowledge that, in calculating the amount of the credit to which the plaintiffs were entitled for each of the taxable years at issue, the commissioner was required to apply the methodology set forth in §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) of the Regulations of Connecticut State Agencies for determining how much income from stock options and grants of restricted stock is allocated to this state when, as here, the employee performs services both within and outside

this state during the "grant-to-exercise period" (in the case of stock options) and "grant-to-vest period" (in the case of restricted stock).[9] As the parties also agree, the proper apportionment of income for tax credit purposes is a function of the ratio between the total compensation received during the grant-to-exercise period or grant-to-vest period for services performed in New York (the ratio's numerator) and the total compensation received during those periods for services performed in this state, New York and anywhere else (the ratio's denominator). In determining that apportionment, however, the commissioner construed §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) as requiring a computation of the total compensation received by Costas during the grant-to-exercise and grant-to-vest periods, *including* deferred compensation that was received in those periods for services rendered prior thereto. This construction of the applicable regulations differed from the interpretation advocated by the plaintiffs, who contended that the apportionment computation should include only compensation received *for services actually performed* during such periods and *not* deferred compensation earned earlier but received in those periods.[10]

In accordance with General Statutes § 12-730,[11] the plaintiffs appealed to the trial court from the determination of the commissioner partially disallowing their claims for refunds. On appeal to the trial court, the plaintiffs claimed that the commissioner (1) misinterpreted §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies, thereby miscalculating to their detriment the amount of the credit available to them, and (2) abused his discretion in failing to utilize the alternate method of apportionment authorized under § 12-711(b)-15 of the regulations in determining the amount of credit to which they were entitled. After jointly stipulating to uncontested facts, the plaintiffs and the commissioner both filed motions for summary judgment.[12]

The court subsequently issued a memorandum of decision granting the commissioner's motion for summary judgment and denying the plaintiffs' motion. In its decision, the court agreed with the commissioner's construction of §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies as providing that the compensation to be considered for purposes of income allocation was all of the compensation Costas received during the grant-to-exercise and grant-to-vest periods, including deferred compensation that Costas received in those periods but had earned prior to those periods. The court held that this calculation was dictated by the language of the regulations, noting, further, that the required methodology was consistent with federal and state income tax principles, which, as the court explained, "focus on taxable events, not when the services occurred," such that "compensation is includable in gross income in the year received, and not in the

year earned." (Internal quotation marks omitted.) The court also rejected the plaintiffs' contention that the commissioner should have exercised his discretion to award them the credit they sought under the alternate apportionment methodology authorized by § 12-711(b)-15 of the regulations because the methodology applied by the commissioner resulted in an unfair and inequitable allocation. The plaintiffs thereafter appealed to this court, renewing the same claims that they had raised in the trial court.

Before addressing those claims, we set forth the legal principles that guide our analysis. Our review of the trial court's decision granting the commissioner's motion for summary judgment is well settled. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Elder* v. *21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 420, 254 A.3d 344 (2021).

"Administrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction . . . . Accordingly, in conducting this analysis, we are guided by the well established principle that [i]ssues of statutory construction raise questions of law, over which we [also] exercise plenary review. . . .

"When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court] seek[s] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 307–308, 152 A.3d 488 (2016), cert. denied, U.S. , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017).

"Ordinarily, the construction and interpretation of a [regulation] is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where . . . the [regulation] has

not previously been subjected to judicial scrutiny or time-tested agency interpretations." (Internal quotation marks omitted.) *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 718, 546 A.2d 830 (1988). Because the regulations at issue in the present case have not previously been subjected to judicial scrutiny, and because neither party claims that the commissioner's interpretation is time-tested, the commissioner's interpretation of the applicable regulations is not entitled to deference.

Furthermore, "[t]he United States Supreme Court has recognized that the taxing authority of a state government is a key component of a state's sovereignty." *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 281, 21 A.3d 759 (2011). As the United States Supreme Court also has explained, "[t]he [s]tates have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the [n]ational [g]overnment or violating the guaranties of the [f]ederal [c]onstitution, the [s]tates have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests." *Allied Stores of Ohio, Inc.* v. *Bowers*, 358 U.S. 522, 526, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959). "The [state's] taxing power is an inherent attribute of sovereignty and as such unlimited in character and scope, [except insofar] as limitations may be self-imposed. Under our form of government its exercise is vested in the legislative department which may exercise it for lawful purposes in its discretion both as regards the choice of subject-matter of taxation and the extent and manner of the tax, save as constitutional limitations may intervene . . . ." (Internal quotation marks omitted.) *Lublin* v. *Brown*, 168 Conn. 212, 221, 362 A.2d 769 (1975). Thus, the authority of the legislature to levy taxes and to grant exemptions is extremely broad. See *Allied Stores of Ohio, Inc.* v. *Bowers*, supra, 526; *Lublin* v. *Brown*, supra, 220–23. Consequently, "[i]t is well established that a state may tax all of the income of one of its domiciliaries, irrespective of the source of that income, geographical or otherwise." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 316.

Nevertheless, Connecticut allows a credit to residents of this state for taxes paid by such residents to another jurisdiction with respect to any income that is derived from sources within that other jurisdiction, including compensation for services performed therein. See General Statutes § 12-704. Under our statutory scheme, a taxpayer is entitled to such credit only if two conditions are met: (1) the tax paid to the other jurisdiction is for income derived from sources within that jurisdiction and (2) the income for which the credit is being sought is taxable as income in this state. See General Statutes § 12-704 (a). As previously indicated,

§§ 12-711(b)-17 (pertaining to restricted stock) and 12-711(b)-18 (pertaining to stock options) of the Regulations of Connecticut State Agencies govern the credit against this state's income tax to which a Connecticut taxpayer is entitled for taxes paid to another state on compensation derived from those sources for services performed in both Connecticut and that other state.[13] Mindful of these principles, we turn to the merits of the plaintiffs' claims.

I

We first address the plaintiffs' claim that the court's interpretation of §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies, like that of the commissioner, was flawed, thereby resulting in the wrongful disallowance of certain credits for taxes the plaintiffs had paid to New York. Specifically, the plaintiffs claim that the court misconstrued the regulations by calculating the tax credit on the basis of a computation of the total compensation for the relevant period as including deferred compensation, that is, compensation that Costas received during the grant-to-exercise and grant-to-vest periods but earned *prior* to those periods. In other words, according to the plaintiffs, the court should have calculated the credit to which they were entitled solely on the basis of the compensation that Costas received during the grant-to-exercise and grant-to-vest periods for services performed during those periods and those periods only. The commissioner takes a contrary view, arguing that the court correctly determined the credit to which the plaintiffs were entitled because "[t]he regulations are not concerned with when . . . compensation is 'earned,' but rather when it is received," and the total compensation received by the plaintiffs during the periods in question included compensation for services performed both during *and* prior to those periods.

We agree with the commissioner and the court because we conclude that their construction of §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) of the Regulations of Connecticut State Agencies is mandated by the plain language of those two provisions. Under both provisions, the amount of credit to be awarded for taxes paid to another state is determined on the basis of the "same ratio that the *total compensation received* . . . during [the relevant] period for services performed in this state bears to the *total compensation received* . . . during [the relevant] period for services performed within and without this state." (Emphasis added.) Regs., Conn. State Agencies § 12-117(b)-17 (c); accord Regs., Conn. State Agencies § 12-117(b)-18 (c). In the present case, there is no dispute that the deferred compensation at issue, that is, compensation that was paid to Costas during the grant-to-exercise and grant-to-vest periods— and which therefore was taxable at that time—was *received* during those periods. Consequently, that

deferred compensation falls squarely within the straightforward regulatory language directing that the computation of credit shall include *all* of the compensation received during the relevant periods for the particular services identified therein.

The plaintiffs nevertheless contend that the regulations contemplate a limitation on the compensation to be included in the apportionment calculation, such that, to be part of the computation, the compensation must also be for services performed during the grant-to-exercise and grant-to-vest periods. That is, the plaintiffs maintain that the provisions should be construed so that the computation excludes compensation, even if it was received during the relevant periods, unless it also was *earned* during those periods. In support of this reading of the regulatory language, the plaintiffs argue that it is more consistent with the statutory and regulatory purpose of offsetting taxes that they were required to pay to New York under that state's allocation methodology because it more faithfully accounts for the amount of time Costas worked in Connecticut during the grant-to-exercise and grant-to-vest periods relative to the amount of time he worked in New York during those same periods.

The plaintiffs' belief as to how the statutory and regulatory purpose is best served, however, cannot trump the plain and unambiguous language of §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) of the Regulations of Connecticut State Agencies, which is necessarily determinative of the provisions' meaning. Our Supreme Court's observations in this regard with respect to the construction of statutes is equally applicable to the construction of regulations. "It is well established that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as [our Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Cady* v. *Zoning Board of Appeals*, 330 Conn. 502, 516, 196 A.3d 315 (2018). Simply put, if the regulatory provisions had been promulgated with the intent that only compensation received *for services performed* during the grant-to-exercise and grant-to-vest periods were to be included in the allocation computation, those provisions undoubtedly would contain language to that effect, and they do not. See, e.g., *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 729, 6 A.3d 763 (2010) (if legislature intended to limit scope of statutory definition at issue, it "easily could have expressed such an intent"); *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 299, 933 A.2d

256 (2007) (legislature knows how to convey its intent expressly).

Indeed, the plaintiffs have identified no language in §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies to substantiate their reading of those provisions.[14] They argue, however, that those provisions must be understood in the context of the broader regulatory scheme and its overriding purpose, and that their construction of the provisions best achieves that goal. We disagree.

As the commissioner explained in his appellate brief, "Connecticut [need not] provide a one to one tax credit based on the number of days a taxpayer has worked in another jurisdiction. . . . Connecticut's allocation ratio does not measure days worked in New York (or any other jurisdiction), but rather compensation received during the grant-to-exercise [or grant-to-vest] period attributable to New York (or any other jurisdiction). That is, if during the period the benefits the plaintiffs received for services performed in Connecticut were more valuable than the benefits the plaintiffs received for services performed in New York, then the allocation ratio would favor Connecticut over New York, *regardless of the number of days that Costas might have worked in New York during that period.* And because the number of days worked in a place does not necessarily reflect the value of the benefits received from that place, there is a good reason for Connecticut to use this kind of allocation ratio. . . .

"[In sum] Connecticut has decided to allow a tax credit based on the value of the benefits received from another jurisdiction, not the number of days worked in that jurisdiction. Absent some constitutional infirmity, Connecticut is free to calculate its tax credit in this way." (Citation omitted; emphasis in original.)

The commissioner is correct. The plaintiffs have made no claim challenging the constitutionality of the commissioner's construction of §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies. Furthermore, those provisions, construed in accordance with their plain language, do not yield absurd or unworkable results.[15] We therefore reject the plaintiffs' claim that the court erred in concluding that the commissioner incorrectly applied the provisions in determining the tax credit to which the plaintiffs are entitled.

II

The plaintiffs also claim, in the alternative, that the court incorrectly refused to require the commissioner to exercise his discretionary authority under § 12-711(b)-15 of the Regulations of Connecticut State Agencies to approve the apportionment methodology they have advanced. In the plaintiffs' view, applying that methodology—irrespective of the requirements of

§§ 12-711(b)-17 and 12-711(b)-18 of the regulations—is, at least in this case, the only approach that fairly and appropriately allocates income for tax credit purposes. The plaintiffs' claim is without merit.

Subsection (a) of § 12-711(b)-15 of the Regulations of Connecticut State Agencies provides in relevant part: "[A] nonresident individual may submit an alternate method of apportionment with respect to items of income, gain, loss and deduction attributable to a business, trade, profession or occupation carried on partly within and partly without Connecticut. The proposed method shall be fully explained in the Connecticut nonresident income tax return. If the method proposed by such individual is approved by the [c]ommissioner, it may be used in lieu of the applicable method described in this Part."[16] Relatedly, subsection (b) of § 12-711(b)-15 provides in relevant part: "The methods provided in this Part are *presumed to result in fair and equitable apportionment, and any person . . . proposing an alternate method of apportionment shall bear the burden of establishing that the methods provided in this Part unfairly and inequitably attributed items of income, gain, loss or deduction to Connecticut.*" (Emphasis added.) Accordingly, under § 12-711(b)-15 (b), the plaintiffs in the present case bear the burden of establishing that the methods provided in §§ 12-711 (b)-17 and 12-711(b)-18 of the regulations, as construed by the commissioner, are so unfair and inequitable as applied to Costas that the commissioner was required to use the alternate method of apportionment proposed by the plaintiffs in determining their tax credit.

In support of their claim under § 12-711(b)-15 (a) of the Regulations of Connecticut State Agencies, the plaintiffs merely repeat their argument that the commissioner's interpretation of §§ 12-711(b)-17 and 12-711(b)-18 of the regulations results in "an unfair and unreasonable allocation of income." We already have explained, however, that the commissioner correctly construed and applied §§ 12-711(b)-17 and 12-711(b)-18 and, consequently, under § 12-711(b)-15 (b), the resulting apportionment thereunder is presumptively fair and equitable. Moreover, the commissioner necessarily must be afforded wide latitude to accept or reject a proposed alternate methodology pursuant to § 12-711(b)-15 (a). Although the plaintiffs are dissatisfied with the apportionment mandated by the regulatory scheme—preferring the apportionment that would result from application of their methodology—that is hardly reason for us to declare that the income allocation derived from the regulations themselves is unfair or unreasonable. Because the plaintiffs have failed to overcome the presumption created by § 12-711(b)-15 (b), we reject their claim under § 12-711(b)-15 (a).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although both John P. Costas and Barbara S. Costas are the plaintiffs in this appeal, only compensation received by John P. Costas is relevant to the issues presented by the appeal. For the sake of simplicity and when necessary, hereinafter we refer to John P. Costas, individually, by his surname.

[2] Section 12-711(b)-17 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) Connecticut adjusted gross income derived from or connected with sources within this state includes, to the extent provided in this section, income recognized under section 83 of the Internal Revenue Code on the transfer of property in connection with the performance of services, if, during the period beginning with the first day of the taxable year of the transferee during which such property was transferred thereto and ending with the last day of the taxable year of the transferee during which the rights of the person having the beneficial interest in such property first were transferable or first were not subject to a substantial risk of forfeiture, whichever occurs earlier (or, if an election is made under section 83(b)(1) of the Internal Revenue Code, the taxable year that such election is made), the transferee was performing such services within Connecticut. In determining whether the person was performing such services within Connecticut, the regulations of this Part shall apply. . . .

"(c) If, during the period described in subsection (a) of this section, the transferee's services were performed partly within and partly without Connecticut, the portion of the amount by which the fair market value of the property, as determined under section 83(a) of the Internal Revenue Code, at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, exceeds the amount, if any, paid for such property, that is derived from or connected with sources within this state is in the same ratio that the total compensation received from the transferor during such period for services performed in this state bears to the total compensation received from the transferor during such period for services performed both within and without this state. . . ."

[3] Section 12-711(b)-18 of the Connecticut State Regulations provides in relevant part: "(a) Connecticut adjusted gross income derived from or connected with sources within this state includes, to the extent provided in this section, income recognized under section 83 of the Internal Revenue Code in connection with a nonqualified stock option if, during the period beginning with the first day of the taxable year of the optionee during which such option was granted and ending with the last day of the taxable year of the optionee during which such option was exercised (or, if the option has a readily ascertainable fair market value, as defined in 26 C.F.R. § 1.83-7(b), at the time of grant, the taxable year during which such option was granted), the optionee was performing services within Connecticut. In determining whether the optionee was performing services within Connecticut, the regulations of this Part shall apply. . . .

"(c) If, during the period described in subsection (a) of this section, the optionee's services were performed partly within and partly without Connecticut, the portion of the amount by which the fair market value of the stock, at the time such option was exercised, exceeds the option price, that is derived from or connected with sources within this state is in the same ratio that the total compensation received from the grantor during such period for services performed in this state bears to the total compensation received from the grantor during such period for services performed both within and without this state. . . ."

[4] Section 12-711(b)-15 of the Regulations of Connecticut States Agencies provides in relevant part: "(a) Where the methods provided in this Part do not apportion items of income, gain, loss and deduction in a fair and equitable manner, the Commissioner may require a nonresident individual to apportion those items under such method as the Commissioner prescribes, as long as the prescribed method results in a fair and equitable apportionment. In addition, a nonresident individual may submit an alternate method of apportionment with respect to items of income, gain, loss and deduction attributable to a business, trade, profession or occupation carried on partly within and partly without Connecticut. The proposed method shall be fully explained in the Connecticut nonresident income tax return. If the method proposed by such individual is approved by the Commissioner, it may be used in lieu of the applicable method described in this Part.

"(b) The methods provided in this Part are presumed to result in fair and equitable apportionment, and any person, whether it be the Commissioner or a nonresident individual, proposing an alternate method of apportionment

shall bear the burden of establishing that the methods provided in this Part unfairly and inequitably attribute items of income, gain, loss or deduction to Connecticut. . . ."

[5] We note that, although §§ 12-711(b)-15, 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies refer to nonresident taxpayers, they are equally applicable to resident taxpayers. See Regs., Conn. State Agencies § 12-704(a)-4 (a) (3).

[6] Although Costas also received some compensation in the form of wages and bonuses, those wages and bonuses are not the subject of this appeal.

[7] General Statutes § 12-704 (a) (1) provides: "Any resident or part-year resident of this state shall be allowed a credit against the tax otherwise due under this chapter in the amount of any income tax imposed on such resident or part-year resident for the taxable year by another state of the United States or political subdivision thereof or the District of Columbia on income derived from sources therein and which is also subject to tax under this chapter."

[8] In their amended returns for taxable years 2005, 2007 and 2008, the plaintiffs increased the amount of their claim for credit for income tax paid to New York to $259,446, $2,878,718, and $280,668, respectively. The commissioner ultimately determined that the plaintiffs were entitled to credit for income tax paid to New York in the amount of $182,536, $1,568,022 and $70,899, for the taxable years 2005, 2007 and 2008, respectively.

[9] The parties use the term "grant-to-exercise period" to refer to the period from the date a stock option is awarded to the date the option is exercised, and the term "grant-to-vest period" to refer to the period from the date restricted stock is awarded to the date of its vesting. For ease of reference, we hereinafter use the same terminology.

[10] By way of illustration of these differing interpretations, the parties provided the following example, as set forth in the plaintiffs' brief to this court: "On June 30, 2007, [Costas] received $13,997,956 in compensation from the vesting of restricted stock that he was granted on March 1, 2006, from [UBS]. . . . During this period of time, [Costas] worked about 65 percent of his time in New York. [The commissioner], taking into account *all* compensation received by [Costas] from January 1, 2006, through June 30, 2007—including compensation received by him in 2006 and 2007 for services rendered *prior* to 2006, when he worked much less in New York— calculated the 'New York [c]ompensation ratio' to be only 23.76 percent, and thus significantly reducing the credit [Costas] claimed for tax paid to New York.

"[The] [p]laintiffs, taking into account all compensation received by [Costas] from January 1, 2006, [through] June 30, [2007], *for services performed during such period*, calculated the 'New York [c]ompensation ratio' to be 65.56 percent. Thus, under [the commissioner's] method, a much lower percentage of this income was deemed to be derived from New York sources, and, therefore, [Costas] was entitled to a much lower credit for the New York tax paid." (Emphasis in original.)

[11] General Statutes § 12-730 provides in relevant part: "[A]ny taxpayer aggrieved because of any determination or disallowance by the commissioner under section 12-729, 12-729a or 12-732 may, not later than thirty days after notice of the commissioner's determination or disallowance is mailed to the taxpayer, take an appeal therefrom to the superior court for the judicial district of New Britain . . . ."

[12] Neither the plaintiffs nor the commissioner claimed that there were any material facts in dispute.

[13] It also bears emphasis that, as the trial court explained, compensation from restricted stock is treated as income at the time the stock vests, and compensation derived from stock options generally is treated as income at the time the options are exercised. The parties do not dispute that restricted stock and stock options are treated in this manner for tax purposes under both federal law and Connecticut law. See, e.g., *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 321–22 (explaining that, because stock option generally has no reasonably ascertainable fair market value at time of award and does have value at time it is exercised, taxable income attributable to stock option is calculated at time of exercise). In the case of stock options, the taxable income is measured by the difference between the option price and the fair market value of the stock when the option is exercised, and, in the case of restricted stock, the taxable income is measured by the difference between the price of the stock when it was granted and its fair market value upon vesting.

[14] The plaintiffs do assert that, because subsection (c) of both provisions

begins with the qualifier "[i]f, *during the period described in subsection (a) of this section*," that is, the grant-to-exercise period and the grant-to-vest period, and thereafter describes the relevant "compensation" as compensation received "*during such period* for services performed in this state," the apparent intent of the provisions is to limit the compensation to be included in the calculation of the credit only to the compensation that was received during that period. (Emphasis in original; internal quotation marks omitted.) The plaintiffs' argument is unavailing because the first reference in subsection (c) to the "period described in subsection (a) of this section" merely delineates the time frame within which services must have been performed partly within and partly without this state so as to implicate the provisions of subsection (c), and the second reference in subsection (c) to that period relates to the "total compensation received" during that period for services performed in this state and contains no limitation as to when the compensation to be included in the computation of credit was earned. Regs., Conn. State Agencies § 12-117(b)-17 (c); accord Regs., Conn. State Agencies § 12-117(b)-18 (c).

[15] We note that the plaintiffs also contend that *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 292, supports their interpretation of §§ 12-711(b)-17 and 12-711(b)-18 of the Regulations of Connecticut State Agencies. We are not persuaded. In *Allen*, our Supreme Court was required to determine whether, under subsection (a) of § 12-711(b)-18, the exercise of stock options is taxable if the taxpayer, although performing services in Connecticut at the time the options were awarded, was not performing services in Connecticut at the time the options were exercised. Id., 303. In agreeing with the commissioner that "§ 12-711(b)-18 (a) requires only that the taxpayer [was] performing services in Connecticut at the time the options were granted"; id., 307; our Supreme Court concluded that § 12-711(b)-18 (a) was plain and unambiguous as applied to the taxpayers' claim because that provision was susceptible of only one reasonable interpretation when considered in the context of the regulation as a whole. Id., 308–13. More specifically, the court explained that the interpretation advocated by the taxpayers in that case "would create disharmony within the regulation itself"; id., 309; and "lead to bizarre results." Id., 311. *Allen* does not aid the plaintiffs because it involved an issue entirely different from the one in the present case. Moreover, applying the plain and unambiguous language of §§ 12-711(b)-17 (c) and 12-711(b)-18 (c) to the plaintiffs' claim neither creates disharmony within the regulatory scheme nor leads to a bizarre or untenable result.

[16] It is undisputed that the plaintiffs did not submit or propose an alternate method of apportionment under § 12-711(b)-15 of the Regulations of Connecticut State Agencies in connection with their resident tax returns for taxable years 2005, 2007 and 2008 but did so in connection with the amended tax returns they filed in 2010 for those years. For present purposes, we treat the plaintiffs' proposal for an alternate method of apportionment pursuant to § 12-711(b)-15 on their amended tax returns as sufficient to preserve their claim on appeal under that provision.