******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MODZELEWSKI'S TOWING & STORAGE, INC., ET AL. *v.* COMMISSIONER OF MOTOR VEHICLES ET AL.
## (AC 45605)

Moll, Cradle and Westbrook, Js.

*Syllabus*

The plaintiff licensed motor vehicle dealers and repairers, T Co. and R Co., appealed to this court from the judgment of the trial court dismissing their administrative appeal from the final decision of the defendant Commissioner of Motor Vehicles, who determined that the plaintiffs had overcharged the owner of a damaged tractor trailer for certain nonconsensual towing and recovery services. The plaintiffs had been summoned by the state police to provide towing and recovery services after the tractor trailer, which was insured by the defendant S Co., was damaged in an accident on Interstate 84. The plaintiffs used special equipment to clear the tractor trailer from the highway and tow it to the plaintiffs' storage facility where it remained for twenty-eight days. The plaintiffs subsequently charged the owner of the tractor trailer for the towing and recovery services, which S Co. paid. S Co. thereafter filed a complaint with the Department of Motor Vehicles, claiming that the plaintiffs' charges were unreasonable and excessive in light of industry standards and the department's regulations (§ 14-63-34 et seq.) governing charges for nonconsensual towing and recovery services. After a hearing, a department hearing officer, relying on §§ 14-63-36b and 14-63-36c of the regulations, issued a decision, concluding that the plaintiffs had overcharged for their services, and ordering them to pay restitution to S Co. and a civil fine to the department. The hearing officer reasoned that the plaintiffs had established their own rate schedule based on the equipment they had used and charged for equipment using their rate schedule rather than the department's approved hourly rate for labor schedule. The hearing officer also declined the plaintiffs' request to dismiss S Co.'s complaint as to R Co., which was based on the plaintiffs' claim that R Co. was a separate entity that did not participate in the towing and recovery services involving the tractor trailer. On appeal, the trial court issued an initial decision agreeing with the hearing officer's interpretation of the applicable regulations but remanded the matter for further findings as to several issues, including whether the plaintiffs had posted an appropriate sign in their workplace setting forth their labor charges, whether they had submitted invoices consistent with the labor charges and, if so, which ones could be considered labor and which of the labor charges also included an equipment charge. The hearing officer thereafter issued a supplemental decision addressing

those issues, and the trial court rendered judgment dismissing the plaintiffs' appeal. *Held*:

1. This court found unavailing the plaintiffs' claim that the trial court improperly concluded that, because the charges they levied were not based on an hourly rate, they were violative of the applicable regulations: although the plaintiffs contended that the regulations did not require that rates for exceptional services be based solely on labor but may include a charge for the special equipment used to perform those exceptional services, the plaintiffs' use of a ratio of factors, such as depreciation, insurance, maintenance and the cost of equipment, to determine their rates for equipment usage was violative of the regulations, which did not provide for the inclusion of those factors in setting an hourly rate for exceptional services but, rather, permitted only an hourly charge for exceptional services that was based on labor; moreover, because the plaintiffs did not maintain a breakdown as to which portion of their charges was based on labor and which portion was based on the cost of equipment, there was no evidentiary basis on which their charges could be found to constitute regulatory compliant labor charges.

2. The plaintiffs could not prevail on their claim that the trial court improperly concluded that the rate schedule they posted in their workplace did not comply with the applicable regulation (§ 14-65j-3): the rate schedule did not comply with § 14-65j-3 in form, as some of the listed items indicated a per hour price, others indicated a minimum number of hours and others stated a dollar amount, and, because the words labor, storage or diagnosis did not appear on the schedule, the hourly labor rate for those items could not be ascertained; moreover, the schedule did not comply with § 14-65j-3 in substance, as the only reasonable conclusion regarding items that listed a piece of equipment and an hourly rate or a dollar amount without specifying whether that amount was a labor, storage or diagnosis charge was that those charges were simply equipment charges.

3. There was substantial evidence in the record to support the imposition of a civil fine against the plaintiffs, as they improperly billed S Co. for equipment charges, for which there was no support in the regulations, failed to maintain accurate records to justify or explain those charges, billed S Co. for items not listed on the plaintiffs' own rate schedule and charged an administrative fee, which was not permitted under the regulations; moreover, this court disagreed with the plaintiffs' claim that, because they had raised a bona fide issue as to the interpretation of the regulations, which have not been subject to judicial review, the fine could not have been based on the commissioner's assertion that the plaintiffs' charges were excessive, as the regulations plainly do not permit towing companies to levy equipment charges, and, although § 14-63-36c of the regulations entitles towing companies to an additional charge for labor, it does not mention equipment costs; furthermore, the plaintiffs' contention that the commissioner's reasoning underlying

imposition of the fine was based on an incorrect assertion that prior determinations by our Supreme Court that fees based on equipment charges were impermissible was unavailing, as there was no indication in the record that the hearing officer had relied on those cases, our Supreme Court has not addressed the issue pertaining to equipment charges for nonconsensual tows, and the hearing officer's decision regarding the fine clearly was linked to his conclusion that the plaintiffs had charged fees in excess of those permitted.

4. Contrary to the plaintiffs' claim, the trial court did not err in concluding that the hearing officer properly declined to dismiss S Co.'s complaint as to R Co.: substantial evidence in the record supported the hearing officer's finding that R Co. was involved in the tow at issue, including the plaintiffs' invoice to S Co., the check paid to and presumably cashed by the plaintiffs, and the fact that those documents seemed to use the corporate names of the entities interchangeably or names that were not formally affiliated with either entity; moreover, there was no documentary evidence to support the plaintiffs' assertion that none of the wreckers used at the accident scene was registered to R Co., the plaintiffs having acknowledged that their invoice to S Co. failed to identify which wreckers were used at the accident scene, as required by statute (§ 14-66b); furthermore, there was no merit to the plaintiffs' assertion that the commissioner had all but conceded R Co.'s lack of involvement because R Co. was not named in any documentation in the record, as the documents cited by the hearing officer, which also did not name T Co., did not mean that T Co. was not involved in the tow.

Argued January 11—officially released May 14, 2024

*Procedural History*

Appeal from the decision of the named defendant ordering the plaintiffs to pay to the defendant Sentry Select Insurance Company restitution for alleged overcharges for towing and recovery services, and to pay a civil penalty to the Department of Motor Vehicles, brought to the Superior Court in the judicial district of New Britain, where the action was withdrawn as to the defendant Sentry Select Insurance Company; thereafter, the case was tried to the court, *Hon. Henry S. Cohn*, judge trial referee; subsequently, the court remanded the case to the named defendant for further findings; thereafter, the named defendant's hearing officer issued a supplemental decision; subsequently, the court denied the plaintiffs' motion to remand the case

to the named defendant for further proceedings and rendered judgment dismissing the appeal; thereafter, the court issued a clarification of its decisions, and the plaintiffs appealed to this court. *Affirmed.*

*Jesse A. Langer*, with whom, on the brief, was *Jeffrey D. Bausch*, for the appellants (plaintiffs).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (named defendant).

*Opinion*

CRADLE, J. The plaintiffs, Modzelewski's Towing & Storage, Inc., and Modzelewski's Towing & Recovery, Inc., appeal from the judgment of the trial court dismissing their appeal from the final decision of the named defendant, the Commissioner of Motor Vehicles (commissioner), concluding that the plaintiffs had violated the regulations established by the commissioner governing permissible fees for the nonconsensual towing[1] and storage of motor vehicles and ordering the plaintiffs to make restitution to the defendant Sentry Select Insurance Company (Sentry),[2] and to pay a civil penalty to the Department of Motor Vehicles (department). On

---

[1] General Statutes § 14-66 (h) defines a nonconsensual tow as the "towing or transporting of a motor vehicle in accordance with the provisions of section 14-145 or *for which arrangements are made by order of a law enforcement officer* or traffic authority, as defined in section 14-297." (Emphasis added.) We note that, at the time of the underlying incident on December 4, 2014, subsection (h) of § 14-66 was codified as subsection (g) of § 14-66. Subsection (g) subsequently was redesignated as subsection (h) of § 14-66. See Public Acts, Spec. Sess., June, 2015, No. 15-5, § 163. Because that redesignation and subsequent amendments to the statute; see Public Acts 2022, Public Acts 2022, No. 22-141, § 1; Public Acts 2022, No. 22-44, § 12; have no bearing on the merits of the plaintiffs' appeal, we refer to the current revision of § 14-66 in this opinion. See also Regs., Conn. State Agencies § 14-63-34 (b).

[2] Although Sentry was named as a defendant in the plaintiffs' administrative appeal to the Superior Court, the appeal was withdrawn as to Sentry on October 20, 2023.

appeal to this court, the plaintiffs claim that the trial court improperly concluded that (1) the fees charged for the tow at issue were in conflict with § 14-63-36b (4) and (5), and § 14-63-36c (c) of the Regulations of Connecticut State Agencies; (2) their posted rate schedule did not comply with § 14-63-36b (4) and (5), and § 14-63-36c (c) of the regulations; (3) the department properly imposed a civil penalty of $4000 against them; and (4) substantial evidence supported the inclusion of Modzelewski's Towing & Recovery, Inc., as a respondent in the underlying administrative proceedings.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' claims. The plaintiffs are licensed motor vehicle dealers and repairers. On December 4, 2014, the plaintiffs were summoned by the Connecticut State Police to perform recovery and towing services involving a tractor trailer in connection with an accident that had occurred on Interstate 84 in Danbury. The tractor trailer, which was severely damaged and had become wedged beneath the metal guardrail, was owned by David Tuttle doing business as Big Daddy Trucking of Waymart, Pennsylvania (Big Daddy), and was insured by Sentry. Upon receiving the call from the state police, the plaintiffs dispatched to the scene a 1075 rotator truck, an Occupational Safety and Health Administration (OSHA) rigging supervisor, a scene supervisor and a major response truck that contained equipment to handle debris and leaks. The plaintiffs used the 1075 rotator truck, which had been set up on an OSHA certified platform, to disentangle the tractor trailer from the metal guardrail. Within approximately

---

[3] We note that the plaintiffs' brief to this court is not a model of clarity in that the arguments contained in the body of the brief do not necessarily correspond to the plaintiffs' stated claims. We therefore have reframed the plaintiffs' claims "to more accurately reflect the arguments set forth in the body of the [plaintiffs'] brief." *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

one hour, the plaintiffs cleared the tractor trailer and debris from the highway and towed the tractor trailer to a nearby parking lot to further secure the vehicle for towing to the plaintiffs' storage facility. The tractor trailer remained at the storage facility for twenty-eight days.[4] The plaintiffs invoiced Tuttle for towing, recovery and storage services in the amount of $29,339. Sentry paid the invoice in total, under duress, to secure the release of the tractor trailer and filed an administrative complaint with the department, contesting the reasonableness of the fees charged by the plaintiffs on the

[4] The plaintiffs alleged that, "[a]s a result of the severe damage, [Modzelewski's Towing & Storage, Inc.] was forced to call in support equipment . . . [which] included [a] man lift, which was necessary to detach the air dam that was at a height of fourteen feet, which exceeded the legal clearance height . . . [a] heavy duty flatbed, which was necessary to transport the [forty] foot man lift . . . [a] lowbed trailer with tractor unit, which was necessary to transport the severely damaged tractor portion of the Big Daddy unit . . . [and an] extra tractor, which was necessary to transport the trailer portion of the Big Daddy unit." The plaintiffs alleged that it "harnessed two certified operators to the man lift basket and proceeded to rig foundry hooks to each corner of the damaged air dam and tractor roof . . . used spill kits to contain the release of fuel leakage from the tractor . . . [and] used the 1075 rotator to lift the air dam from the tractor roof and placed it on the ground next to the damaged tractor." According to the plaintiffs, "[d]uring that process, [Modzelewski's Towing & Storage, Inc.] noticed a puncture in the fuel tank and utilized a diesel pump off system to evacuate the fluids into a certified containment drum." The plaintiffs "used the 1075 rotator to lift the tractor onto the lowbed trailer, which was positioned underneath the raised tractor, and secured the tractor thereto. [Modzelewski's Towing & Storage, Inc.] placed the detached air dam in the Big Daddy trailer, which was coupled to [Modzelewski's Towing & Storage, Inc.'s] extra tractor." The plaintiffs "installed a 4000 watt lighting system to provide a safe and illuminated work space [and] . . . utilized communications equipment throughout the continued recovery to ensure safety and efficient coordination." The plaintiffs explained that Modzelewski's Towing & Storage, Inc., "secured the Big Daddy tractor at the storage facility and left it on the lowbed trailer overnight. . . . The next day, December 5, 2014, [Modzelewski's Towing & Storage, Inc.] utilized the 1075 rotator and certified riggers to remove the damaged tractor from the lowbed trailer and secure it at the storage facility. This process took approximately 2.5 to three hours." Although Sentry challenged below the reasonableness and necessity of some of the measures taken by the plaintiffs, neither the hearing officer nor the court reached those arguments, and they are not at issue in this appeal.

grounds that they were "unreasonable, excessive and not keeping within industry standards or the Connecticut standards for nonconsensual towing or transportation, further codified in §§ 14-63-34 to 14-63-37b of the Regulations of Connecticut State Agencies."

On August 28, 2020, after a hearing, the department's hearing officer issued his decision with respect to Sentry's complaint. The hearing officer first indicated that, because Modzelewski's Towing & Storage, Inc., and Modzelewski's Towing & Recovery, Inc., are both owned and operated by James E. Modzelewski, his decision would reference the two entities as a single entity for purposes of the administrative appeal. The hearing officer explained that the plaintiffs had asked that the case be dismissed as to Modzelewski's Towing & Recovery, Inc., because it was not involved in the tow at issue. The hearing officer denied that request on the ground that the invoices submitted to Sentry "were entitled Modzelewski's Recovery, Inc." As to Sentry's challenge to the reasonableness of the invoiced fees, the hearing officer explained that, "[r]ather than using and charging the approved rates, the [plaintiffs] established, posted and used [their] own rate schedule based on [the] equipment [used]. The [plaintiffs] charged for equipment using [their] schedule, as opposed to using the approved hourly rate for labor schedule." On that basis, the hearing officer concluded that the plaintiffs had overcharged Sentry and ordered the plaintiffs to repay Sentry $24,687.22 as restitution and, also, imposed a civil penalty of $4000 against the plaintiffs. The plaintiffs appealed to the Superior Court.

On July 1, 2021, after a hearing, the court, *Hon. Henry S. Cohn*, judge trial referee, issued a decision agreeing with the hearing officer's interpretation of the applicable regulations, concluding that § 14-63-36c (c) of the regulations states that "the towing company is entitled

to an additional charge for its 'labor' and does not mention equipment costs." The court found "problematic," however, the hearing officer's determination that, "[r]ather than using and charging the approved rates, the [plaintiffs] established, posted and used [their] own rate schedule based on [the] equipment [used]. The [plaintiffs] charged for equipment using [their] schedule, as opposed to using the approved hourly rate for labor schedule." Specifically, the court found it unclear whether the hearing officer meant that the plaintiffs were required to bill in accordance with the commissioner's approved rates even though § 14-63-36c (c) permits the towing company to use their own labor rate for exceptional services. The court also noted that the hearing officer failed to address whether the plaintiffs had posted a labor schedule in accordance with the regulations. Additionally, the court found problematic the hearing officer's statement that the plaintiffs charged only for equipment, not labor. The court explained: "The existing record is ambiguous on this point. The invoices state that the plaintiffs 'used'[5] certain equipment to remedy the situation at the scene and sets forth a charge. . . . There is nothing in the record or in the final decision to explain whether each charge was for their labor or the equipment itself or both. [Modzelewski's] testimony at the department's hearing of January 10, 2020, is ambiguous. While he sets forth how he calculated the equipment charge, and did not include labor, he then states that he did bill on the basis of labor." (Footnote altered.) Finally, the court held that, "even if the plaintiffs may claim that some or all of their charges are due to a properly posted labor schedule, the hearing officer may reject any or all of the billed charges as not reasonable or necessary. This is not discussed in the final decision." Accordingly, the

---

[5] The court noted that "[t]he word 'use' has been defined as the 'act of using something' in Webster's Third International Dictionary."

court remanded the matter to the department to address three issues: (1) whether the plaintiffs had posted an appropriate sign in their workplace setting forth labor charges; (2) whether the plaintiffs had submitted invoices consistent with the labor charges, and, if so, which ones may be considered labor, and which of the labor charges also included an equipment charge; and, (3) assuming that there are labor charges, whether those charges are reasonable and necessary. The court noted that, "[i]n its discretion, the department may need to conduct a further hearing."

On November 18, 2021, the hearing officer issued a written decision in response to the court's remand. Preliminarily, the hearing officer declined to "[reopen the] case for a limited remand hearing" because the parties had been afforded "ample opportunity" to introduce evidence "without restriction." The hearing officer then responded to the court's directions on remand. In addressing the court's inquiry about whether the plaintiffs had posted an appropriate sign in their workplace setting forth their labor charges, the hearing officer explained: "The plaintiffs did not post an appropriate sign or signs in [their] workplace setting forth [their] allowed labor charges. The rate schedule posted [by the plaintiffs], beyond what in part appear to be hourly labor charges in five categories (Certified Driver, Certified Man Power, Clean-Up Supervisor, Extra Man, Rigging Supervisor), is not a schedule of hourly charges for labor. Consistent with the hearing decision, labor charges are permitted labor charges for nonconsensual tows as allowed by statute and regulation. According to the testimony of [Modzelewski], these fees were posted in his office and included fees for what he considered exceptional services. [Modzelewski testified that, in] arriving at these rates, 'the exceptional services and the specialized recovery equipment is not used every day. So, we take a ratio of what the equipment

costs, the depreciation, the insurance, the maintenance, obviously the cost of the equipment, and we put that together and we come up with a rate for that piece of equipment.' . . . Upon later questioning by [the plaintiffs' counsel], he admitted that the fees did not include charges for individual labor, but the charges or fees did include the vehicle and the operator. . . . In response to [a] question [from the commissioner's counsel], 'do you have a numerical breakdown for each, how much did you charge for the operator or how much you charged for the equipment? . . . do you have a breakdown for each?' . . . his response was, 'I don't.' . . . In this case, where the plaintiffs did not charge, itemize separately, and keep an accurate record of such additional services, expressed in the form of an hourly labor rate, it was disallowed by the [commissioner]. Whether or not a charge is viewed as an exceptional service is not material. It still needs to be calculated on the basis of an hourly labor rate." (Citations omitted.)

The hearing officer then addressed the issue of whether the plaintiffs had submitted invoices "in keeping with the labor charges," which of the charges may be considered labor charges, and whether some of the labor charges also include an equipment charge. The hearing officer explained: "Evidence in the hearing record . . . is the invoice in this case. This invoice is not a record for services related to the tow itemized in accordance with the hourly charge for labor other than, again, where it was found to be expressed as an hourly labor charge as opposed to an equipment charge. When the plaintiffs' invoice listed a charge that was found to be consistent with an hourly labor charge, such as the scene supervisor, it was an allowed charge. When the plaintiffs' invoice listed a charge that was found to be an equipment charge and not an hourly labor charge, such as the 75 ton rotator, it was disallowed. When the plaintiffs' invoice listed a charge that was neither an

hourly labor charge nor an equipment charge, such as the 10 percent administration billing fee, it was disallowed. Whether some of the equipment charges also included labor charges cannot be determined, and the plaintiffs failed to provide evidence on that issue. The core issue remains [that] charges must be at hourly labor rates. As to the question of whether some of the labor charges also include an equipment charge, my analysis of the evidence was [that] some of the equipment charges may also include labor charges, but evidence was lacking to confirm this, as hourly labor rates were not recorded." (Citation omitted.)

And, finally, the hearing officer addressed the court's third issue, namely, assuming that there are charges for labor, whether those charges are reasonable and necessary. The hearing officer found: "Where the evidence demonstrated an hourly labor charge that was found to be reasonable and necessary, it was approved. Other than what was provided on the invoice . . . it was admitted that there was no record kept of hourly labor charges." (Citation omitted.) The hearing officer found the total allowed charges to be $4651.78, and listed each of the claimed charges set forth on the plaintiffs' invoice and indicated whether it was allowed, and in what amount, or disallowed as an equipment charge and whether the rate was listed in the plaintiffs' rate schedule.[6] The hearing officer explained: "The

[6] Specifically, the hearing officer addressed each of the charges levied against Sentry as follows:

"Total charges found to be allowed were $4651.78. As to the invoice listed charges . . .

"*Scene Supervisor, listed as $250.00 x 4, total charge $1,000 + tax = $1063.50 allowed as a charge calculated at an allowable hourly labor rate;

"*75 Ton Rotator First Hour, listed as $1750.00 x 1, and 75 Ton Rotator listed as $ 750.00 x 3, total charge $ 4000.00 + tax = $4254.00 disallowed as not found to be calculated at an approved hourly labor rate; nonetheless allowed $325.00 x 4, total allowed charge $1300.00 + tax = $1382.55, based on [the commissioner's] approved rates . . .

"*OSHA Rigging Supervisor, listed at $250.00 x 4, total charge $1000.00, disallowed as evidence was wreckers for towing vehicles are exempt from

plaintiffs in this case viewed many of the charges as exceptional services, [as] enumerated in testimony by [Modzelewski]. . . . However, assuming *arguendo* this position, such charges would still be restricted to hourly charges for labor as allowed by the commissioner, not charges of the plaintiffs' own making for equipment. It was not necessary to reach a determination if a service was exceptional or not if the service

OSHA riggers. . . . No evidence to the contrary was produced at the hearing . . .

"*Major Response Incident Truck, listed as $750.00 x 4, total charge $3000.00 + 6.35% = $3190.50, disallowed as found not to be calculated at an approved hourly labor rate;

"*Heavy Duty Flatbed, listed at $325.00 x 4, total charge $1300.00 + tax = $1382.55, disallowed as found to be an equipment charge, and [the commissioner's] rates and charges applicable are charges based on distance and vehicle weight;

"*45 Ft Man Lift, listed at $450.00 x 4, total charge $1800.00+ tax = $1914.30, disallowed as found not calculated at an approved hourly labor rate, and not listed in [plaintiffs'] rate schedule;

"*Communications Systems, listed as $175.00 x 4, total charge $700.00 + tax = $744.45, disallowed as found to be an equipment charge, and not listed in [plaintiffs'] rate schedule;

"*Light Tower, listed as $175.00 x 4, total charge $700.00 + tax = $744.45, disallowed as found to be an equipment charge;

"*Low Bed Trailer, listed as $325.00 x 4, total charge $1300.00 + tax = $1382.55, disallowed as found to be an equipment charge;

"*Tractor Unit, listed as $325.00 x 4, total charge $1300.00 + tax = $1382.55, disallowed as found to be an equipment charge, and there was no evidence it was an hourly labor rate;

"*Diesel Pump Off, listed as $800.00, total charge $800.00 + tax = $850.80, disallowed as found to be an equipment charge, with no evidence it was an hourly labor rate charge;

"*Spill Kit, listed as $55.00 x 5, total charge $275.00 + tax = $292.46, disallowed as found to be an equipment charge;

"*Fuel Surcharge, listed as $50.00 x 6, total charge $300.00 + tax = $319.05, disallowed with exception of $4.00 + tax = $4.25, consistent with the decision in DMV case No. CCC-2011-1587, dated May 28, 2013, also involving [these plaintiffs] . . .

"*Truck Cover, listed as $110.00, total charge $110.00 + tax = $116.98, disallowed as found to be an equipment charge;

"*10% Administration Billing Fee, listed as $2258.50, total charge $22589.50 + tax = $2401.898, disallowed as not a permissible charge;

"*Storage, listed as $44.00 x 28 = $54.00 x 28, total charge $1232.00 +

was not recorded and invoiced as required using an hourly rate. . . . The plaintiffs cannot avoid the dictates of statute and regulation by constructing [their] own fee schedule, claiming most services are exceptional, then posting a fee schedule that is not [an] hourly charge for labor but, rather, in most instances an obvious equipment schedule, with some undetermined part for 'operators.' " (Citation omitted.)

On December 14, 2021, the plaintiffs filed with the court a motion to remand the case to the hearing officer for additional evidence, arguing that "[t]he remand decision [of the hearing officer] did not address any of the issues the court ordered briefed as set forth in the [court's remand] order" and that "[t]he remand decision does not adequately address the ambiguity highlighted in the court['s] remand [order]." The plaintiffs sought a remand for "an abbreviated proceeding limited to how [they] formulated [their] fee schedule . . . ." The court denied the plaintiffs' motion. The court explained that it had remanded the matter to the hearing officer for further findings as to whether the plaintiffs had followed the applicable regulations regarding "the setting of rates and the posting of a sign at [their] office." The court reasoned that "[t]he original record as supplemented by the further decision of the [department] hearing officer is sufficient for the determination of the issues raised by the plaintiffs. There is no need for an additional remand. A remand does not offer the parties an opportunity to relitigate the case ab initio." (Internal quotation marks omitted.)

After considering the parties' supplemental briefs and additional oral argument, the court issued a memorandum of decision on April 11, 2022, dismissing the plaintiffs' appeal from the decision of the hearing officer.

$1512.00, + tax, corrected without objection to reflect $716.47 overcharge." (Citations omitted.)

The court agreed with the hearing officer's determination that charges for exceptional services must be based on labor only and that the "pro rata cost of equipment may not be a factor." The court concluded that there was substantial evidence presented to support the hearing officer's findings that the plaintiffs had failed to post a sign that complied with the regulations in that the sign posted by the plaintiffs included fees that "included not just those [charges] for labor" but also charges that "reflected the cost of the [plaintiffs'] machinery." The court further concluded that there was substantial evidence to support the hearing officer's determinations as to which of the plaintiffs' charges to Sentry were permissible and which were not; that the fine levied against the plaintiffs was appropriate pursuant to General Statutes § 14-64; and that both plaintiffs were involved in this matter.

The plaintiffs thereafter filed a motion to reargue or for reconsideration of the court's ruling, requesting clarification on whether the department can determine if a "rate" is reasonable and necessary as opposed to whether the "service" is reasonable and necessary to effectuate the tow. In response to that motion, the court clarified its two previous decisions as follows: "Assuming that the towing company fully meets the requirements of § 14-63-36c (c) [of the regulations], the towing company may establish its own rates for [exceptional] services and is not bound by the rate issued by the [commissioner] under § 14-63-36 (a) and (b). The [department] may review compliance by the towing company with [its] regulations regarding the need for services and the reasonableness of the rate set by the towing company." This appeal followed.

We begin by setting forth the standard of review and legal principles that govern our resolution of the plaintiffs' claims. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative

Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before [the commissioner], acted contrary to law and in abuse of [the commissioner's] discretion . . . .

"Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Similarly], this court affords deference to the construction of a statute applied by the administrative

agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *Lucky 13 Industries, LLC* v. *Commissioner of Motor Vehicles*, 210 Conn. App. 558, 563–65, 270 A.3d 188, cert. denied, 343 Conn. 905, 272 A.3d 1127 (2022).

I

The plaintiffs first claim that the court improperly concluded that the charges they levied in connection with the tow at issue in this case violated §§ 14-63-36b (4) and 14-63-36c (c) of the regulations in that they were not based on an hourly labor rate. The plaintiffs argue that the regulations do not require that rates for "exceptional services" be based solely on labor, but that they also properly may include a charge for the special equipment used to perform those exceptional services. We are not persuaded.[7]

The plaintiffs' claim requires us to interpret the department's administrative regulations. "Administrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction . . . . Accordingly, in conducting this analysis, we are guided by the well established

[7] The plaintiffs also claim that the court erred in construing the regulations "such that the commissioner . . . can determine if the rate for an 'additional service' falling under § 14-63-36c (c) [of the regulations] is reasonable and necessary as opposed to whether the service is reasonable and necessary . . . ." Neither the hearing officer nor the trial court reached this claim because they both found that the rates charged by the plaintiffs failed to comply with the regulations. We likewise do not reach this claim. We note, however, that the portion of § 14-63-36c (c) of the regulations that provides the commissioner with the authority to "require the wrecking service to justify such additional fees" seems to undermine the plaintiffs' argument in this regard.

principle that [i]ssues of statutory construction raise questions of law, over which we [also] exercise plenary review. . . .

"When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court] seek[s] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . .

"Ordinarily, the construction and interpretation of a [regulation] is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where . . . the [regulation] has not previously been subjected to judicial scrutiny or time-tested agency interpretations." (Citation omitted; internal quotation marks omitted.) *Costas* v. *Commissioner of Revenue Services*, 213 Conn. App. 719, 729–30, 280 A.3d 108, cert. denied, 345 Conn. 911, 283 A.3d 507 (2022). Because the present case presents a question of law and does not involve the department's time-tested interpretation of its regulations, the standard of review is de novo. See *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 622, 15 A.3d 1063 (2011).

Pursuant to General Statutes § 14-66 (a) (2), which provides in relevant part that "[t]he commissioner shall

establish and publish a schedule of uniform rates and charges for the nonconsensual towing and transporting . . . and for the storage of motor vehicles," the commissioner has promulgated §§ 14-63-34 through 14-63-37b of the Regulations of Connecticut State Agencies. These regulations set forth, inter alia, the permissible charges that licensed wreckers may levy in relation to nonconsensual towing.[8] Section 14-63-36c (c) of the regulations provides in relevant part: "A licensed wrecker service may charge additional fees for exceptional services, and for services not included in the tow charge or hourly rate, which are reasonable and necessary for the nonconsensual towing or transporting of a motor vehicle. Any such additional fees shall be itemized in accordance with the hourly charge for labor posted by the licensed towing service, as required by the provisions of section 14-65j-3 of the Regulations of Connecticut State Agencies. Such additional fees shall be itemized separately, and the towing service shall maintain accurate records which explain such additional services. The commissioner may require the wrecking service to justify such additional fees. A copy of each towing bill or invoice containing the information required pursuant to section 14-66b of the general statutes shall be given to the customer upon payment of the bill." Section 14-63-36b

---

[8] Section 14-63-36a of the Regulations of Connecticut State Agencies provides: "The commissioner shall publish a list of uniform rates and charges for the nonconsensual towing and transporting of motor vehicles, and for storage of motor vehicles, which he has determined to be just and reasonable. The commissioner may consider factors such as rates set by other jurisdictions, towing services provided by contract with automobile clubs and associations, operating costs of the towing and recovery industry in Connecticut, single source contracts resulting from competitive bids on behalf of municipalities and business entities, and rates published in standard service manuals. Such list of rates and charges shall be distributed to each licensed wrecker service, and to other interested parties, upon request. Such rates and charges shall be the maximum rates and charges that the commissioner shall permit for the nonconsensual towing and transporting of motor vehicles, and for storage of motor vehicles, in accordance with subsection (a) of section 14-66 of the general statutes and sections 14-63-36b and 14-63-36c."

(4) of the regulations defines "exceptional services" as "the use of special equipment such as cutting torches, air compressors and other equipment not generally required for nonconsensual towing or transporting services, at the scene of an accident." Section 14-63-36b (5) of the regulations defines "hourly rate" as "the maximum hourly rate determined by the commissioner that may be charged for the nonconsensual towing or transporting and recovery of a motor vehicle with a G.V.W.R. of ten thousand (10,000) pounds or more. Such rate shall not include exceptional services provided by one or more licensed wrecker services."

The commissioner concedes that, pursuant to § 14-63-36b (5) of the regulations, he is not authorized to set hourly labor rates for towing companies seeking additional fees for exceptional services under § 14-63-36c (c) of the regulations but maintains that those fees must be based on hourly labor rates. The plaintiffs argue that, because the regulations allow licensed towing companies to charge "additional fees for exceptional services" and "exceptional services" is defined as "the use of special equipment," their inclusion of the cost of procuring, maintaining, repairing and insuring the special equipment used for the tow at issue was appropriate. Although it reasonably may be argued that the term "use" in the phrase, "the use of special equipment," may be ambiguous in that it is susceptible to more than one reasonable interpretation when that phrase is read in isolation, that ambiguity is resolved when the phrase is read in conjunction with the portion of § 14-63-36c (c) that specifically requires "additional fees for exceptional services" to be "itemized in accordance with the hourly charge for *labor* . . . ." (Emphasis added.) There is no support, however, in the regulations for a towing service to include an equipment charge in its rates for exceptional services.

As to the plaintiffs' charges in this case, the plaintiffs argue that the rate they charged as to each piece of special equipment was "the amount for the operator to operate the specific 'special equipment' pursuant to § 14-63-36c (c) [of the regulations] and as set forth in § 14-63-36b (4) [of the regulations]. Ultimately, this approach to setting [the plaintiffs'] rate schedule is congruent with the definition of 'exceptional service' . . . . The rate is for the operator using the specific 'special equipment.' " (Emphasis omitted.) The plaintiffs contend that Modzelewski simply "did not articulate more clearly that it was a labor rate based on the type of equipment used. It is eminently reasonable (and necessary) to set a rate for a particular 'exceptional service' based on the 'special equipment' being operated." This argument is belied by Modzelewski's testimony that the rates that are listed on the plaintiffs' posted rate schedule and that they charged Sentry, were based on "a ratio of what the equipment costs, the depreciation, the insurance, the maintenance, obviously the cost of the equipment, and we put that together and we come up with a rate for that piece of equipment."[9] As stated, the regulations clearly and unambiguously do not provide for the inclusion of these factors in setting the hourly rate for exceptional services. They only permit an hourly charge for exceptional services that is specifically based on labor. Although Modzelewski eventually testified that the charges were for the special equipment and the operator of the special equipment, he indicated that he did not maintain a breakdown as to which portion of the charges was based on labor and which was

[9] The plaintiffs also have not indicated with any degree of specificity the manner in which they calculated the equipment portion of each charge. Modzelewski's inability to articulate the labor versus equipment portion of each of his charges is puzzling in light of his testimony that he used a "ratio" of various costs associated with the equipment to arrive at his rates. Presumably, he would simply add a labor fee to that number to arrive at the total charge.

based on the cost of equipment. Because Modzelewski failed to explain which portion of his charges allegedly constituted a labor charge versus an impermissible equipment charge, there was no evidentiary basis on which his charges could have been found to constitute regulatory compliant labor charges.[10] Accordingly, the plaintiffs' claim that the court improperly concluded that the charges they levied in connection with the tow at issue violated the applicable regulations is unavailing.[11]

## II

The plaintiffs also claim that the court improperly concluded that their posted rate schedule did not comply with the applicable regulations. We disagree.

As set forth herein, § 14-63-36c (c) of the regulations requires that additional fees for exceptional services be itemized in accordance with the hourly charge for labor posted by the towing service as required by § 14-65j-3 of the regulations.[12] Section 14-65j-3 requires that

[10] Moreover, the hearing officer correctly found that the plaintiffs charged Sentry for items that are not permitted by the regulations, such as an administrative fee and a fuel surcharge. The plaintiffs also charged Sentry for items that were not listed on their posted rate schedule, such as communications systems, which were not approved by the hearing officer. See footnote 5 of this opinion.

[11] To the extent the plaintiffs also argue that the hearing officer applied the regulations inconsistently, unreasonably and arbitrarily, we disagree. Our review of the record reveals that the hearing officer carefully examined each of the charges listed on the plaintiffs' invoice to Sentry and compared them with the plaintiffs' posted rate schedule and Modzelewski's testimony. There was evidence to support certain charges and a lack of evidence to support other charges. Because there was substantial evidence in the record to support the hearing officer's findings, we cannot conclude that his application of the regulations was inconsistent, unreasonable or arbitrary.

[12] Section 14-65j-3 of the Regulations of Connecticut State Agencies titled, "Charges and conditions sign," provides in relevant part: "(a) This sign shall not be less than 17 inches by 24 inches and be displayed in each area of the premises where work orders are placed by customers. The sign shall state:

"(1) The hourly charge for labor;

"(2) The conditions, if any, under which the shop may impose charges

every licensed towing service must post a sign that shall "not be less than 17 inches by 24 inches and be displayed in each area of the premises where work orders are placed by customers" that sets forth its charges for labor, storage and diagnosis. It further sets forth the manner in which the posted rate schedule must be laid out and which fonts should be used.[13]

An examination of the plaintiffs' posted rate schedule reveals that it did not comply with § 14-65j-3 of the regulations in form or substance. As to form, the plaintiffs' posted rate schedule, titled "Rate Schedule," consists of two columns that contain fifty-seven line items, most of which are for certain pieces of presumably "special equipment."[14] Regs., Conn. State Agencies § 14-63-36b (4). Some of those items indicate a "per hour" price. For instance, the rate schedule lists "20 ton MD Wrecker $200/hr." Several of those line items indicate a certain minimum number of hours, such as "1075 Rotator Fee $750 4Hr Min." Other items simply state a dollar amount. For example, "Chain Saw $125" and

---

for storage, and the amount of any such charges; and

"(3) The charge, if any, for a diagnosis.

"(b) Each sign shall have the following headings 'LABOR CHARGES,' 'STORAGE CHARGES,' 'DIAGNOSIS CHARGE' and '$'. All headings shall be 120 point bold face type, caps, sans-serif such as helvetica bold, standard bold compressed or similar.

"(c) Other information on such sign shall be at least 48 point medium face type, caps, sans-serif such as helvetica medium, avant garde demi or similar. . . ."

Subsection (d) of § 14-65j-3 then sets forth the proper order and form of the sign.

[13] The department created a form for use by licensed towing services that contains areas where the towing services must fill in their "hourly charge for labor" for tows when exceptional services are provided. (Emphasis in original.)

[14] We also note that the plaintiffs' posted schedule of fees includes "Admin Fee 10%." This fee is not based on an hourly rate of labor or the use of special equipment and, therefore, violates the regulations. The plaintiffs charged Sentry this fee and it was disallowed. The plaintiffs have not pursued the validity of this fee on appeal.

"Spill kit $55." There are other line items that simply list a service and an associated dollar amount, such as "Flat Tire Change $175." Because the words labor, storage or diagnosis do not appear anywhere on the plaintiffs' posted rate schedule, the plaintiffs' hourly labor rates for those items cannot be ascertained.

As to substance, to the extent some of the line items on the plaintiffs' posted rate schedule list a piece of equipment and then an hourly rate, perhaps those are the items to which Modzelewski referred when he testified that the rate listed included the operator and the equipment. Insofar as those rates include an equipment charge, they violate § 14-63-36c (c) of the regulations. As to the line items that simply list a piece of equipment and a dollar rate without specifying whether it is a labor charge, storage charge or diagnosis charge, the only reasonable conclusion is that those items are simply equipment charges, which, as held herein, violate § 14-63-36c (c). We therefore agree with the court's conclusion that the plaintiffs' posted rate schedule did not comply with the applicable regulations.

### III

The plaintiffs also claim that the court erred in concluding that the hearing officer properly imposed a civil fine of $4000 against them. We are not persuaded.

Section 14-64 provides in relevant part: "The commissioner may . . . impose a civil penalty of not more than one thousand dollars for each violation on any licensee or both, when, after notice and hearing, the commissioner finds that the licensee (1) has violated any provision of any statute or regulation of any state or any federal statute or regulation pertaining to its business as a licensee or has failed to comply with the terms of a final decision and order of any state department or federal agency concerning any such provision . . . ."

The hearing officer found, inter alia, that, "[r]ather than using and charging approved rates, the [plaintiffs] established, posted and used [their] own rate schedule based on equipment" and concluded that the plaintiffs had "charged fees in excess of the maximum rates and charges permissible under . . . Connecticut Statutes and Regulations" and, accordingly, ordered restitution and a civil fine of $4000 pursuant to § 14-64.

In his brief to the trial court, the commissioner argued, inter alia, that the plaintiffs' appeal should be dismissed because the issue of whether a towing company could levy equipment charges under § 14-63-36c (c) of the regulations had already been rejected by our Supreme Court in two other cases,[15] one of which involved the plaintiffs. The commissioner asked the court to affirm the hearing officer's order imposing the fine on the plaintiffs for "violating state laws and regulations governing nonconsensual towing by charging excessive fees for towing and recovery services provided."

The court disagreed with the commissioner that the issue had been decided by our Supreme Court but agreed with the hearing officer that "[c]learly . . . § 14-63-36c (c) [of the regulations] states that the towing company is entitled to an additional charge for its 'labor' and does not mention equipment costs." On remand from the court, the hearing officer explained, inter alia, that "[t]he plaintiffs cannot avoid the dictates of statute and regulation by constructing [their] own fee schedule, claiming most services are exceptional, then posting a

---

[15] The cases referred to by the commissioner were *Modzelewski's Towing & Recovery, Inc.* v. *Commissioner of Motor Vehicles*, 322 Conn. 20, 139 A.3d 594 (2016), and *Raymond's Auto Repair, LLC* v. *Commissioner of Motor Vehicles*, 322 Conn. 43, 45, 139 A.3d 609 (2016). Those cases involved the issue of whether the department's regulations were preempted by federal law, not whether equipment charges properly may be included in charges for exceptional services.

fee schedule that is not an hourly charge for labor but, rather, in most instances an obvious equipment schedule with some undetermined part for 'operators.' " In its decision following the remand, the court found that the fine was appropriate.

On appeal, the plaintiffs argue that "[t]he [commissioner's] stated reasoning for the [fine] . . . demonstrates that it was improperly imposed." The plaintiffs contend that the reasoning underlying the imposition of the fine was improper because it was based on the incorrect assertion that our Supreme Court had already determined that fees based on equipment charges were impermissible. They also argue that the fine could not properly have been based on the commissioner's assertion that their charges were excessive because they "raised a bona fide issue as to the interpretation of §§ 14-63-36b and 14-63-36c (c) [of the regulations], which had not yet been reviewed by the courts, and the department's application of those regulations to the subject tow." They contend that "the department's basis for a civil penalty is incorrect and, thus, the penalty meted out is unwarranted and appears to be aimed at the plaintiffs for exercising their statutory rights." The plaintiffs' arguments merit little discussion.

First, there is no indication in the record that the hearing officer relied on either of the cases cited by the commissioner in imposing the fine on the plaintiffs. Rather, the hearing officer's decision in this regard clearly was linked to his conclusion that the plaintiffs charged fees in excess of those permitted. Second, the court also explicitly disagreed with the commissioner's argument that the issue had been decided in the cases cited by the commissioner but agreed that the fees charged by the plaintiffs were improper and that the fine therefore was justified.

The language of the applicable regulations plainly does not permit towing companies to levy equipment

charges. We therefore disagree with the plaintiffs' characterization of their interpretation of the applicable regulations as "bona fide." As the plaintiffs acknowledge, the issue pertaining to equipment charges for nonconsensual tows has not been addressed by our courts. We disagree with the plaintiffs' assertion that they were "exercising their statutory rights," an argument for which they have provided no support. The plaintiffs charged Sentry equipment charges, for which there is no regulatory support. They failed to maintain accurate records to justify, or even explain, those charges. Furthermore, they charged Sentry for items not listed on their own rate schedule,[16] and they charged Sentry an administrative fee, which is not even arguably permitted under the regulations. We therefore conclude that there was substantial evidence in the record to support the imposition of the fine.

IV

Finally, the plaintiffs claim that the court erred in concluding that the hearing officer properly denied their request to have Sentry's complaint against Modzelewski's Towing & Recovery, Inc., dismissed.

In their prehearing brief, the plaintiffs argued that "[Modzelewski's Towing & Recovery, Inc.] was not involved in the tows underlying the present matter. [Modzelewski's Towing & Recovery, Inc.] is a separate entity with a separate place of business. . . . [Modzelewski's Towing & Recovery, Inc.] has a separate repairer license and its own fleet of wreckers. . . . The state police] called [Modzelewski's Towing & Storage, Inc.] to the accident scene. . . . Accordingly, [Modzelewski's Towing & Recovery, Inc.] should be removed as a respondent in this matter."[17] (Citations omitted.)

---

[16] For instance, the plaintiffs charged Sentry for four hours associated with a "major incident response truck" at a rate of $750 per hour. The rate listed on the plaintiffs' posted rate schedule is $550 per hour with a four hour minimum.

[17] The commissioner did not file a prehearing brief.

At the hearing, Modzelewski testified before the hearing officer that Modzelewski's Towing & Recovery, Inc., has its own equipment and its own fleet of wreckers, none of which was used in the tow at issue. Modzelewski's Towing & Recovery, Inc., did not respond to the accident, and Big Daddy's tractor trailer was not stored at Modzelewski's Towing & Recovery, Inc.'s facility in Newtown. As to why the invoice sent to Sentry bore the name "Modzelewski's Recovery, Inc.," Modzelewski testified before the hearing officer: "The computer program that we use to write our recovery bills, when we enter it, it pops up recovery, and recovery bill it pops up recovery, not a tow." He explained that it was an "administrative issue" that arises when "we click in recovery and that's when the name pops up . . . ." He acknowledged that "Modzelewski's Recovery, Inc.," "pops up" on the computer even if the tow is from his other company.

The hearing officer declined to dismiss Sentry's complaint as to Modzelewski's Towing & Recovery, Inc. The hearing officer explained: "[The plaintiffs ask] that the case as against [Modzelewski's Towing & Recovery, Inc.] be dismissed, claiming it was not involved in the tow. However, the invoices from the [plaintiffs] were entitled Modzelewski's Recovery, Inc. The payment check issued by [Sentry] was to Modzelewski Tow & Storage, Inc., not Modzelewski's Towing & Storage, Inc. There is also the lack of documentary evidence in compliance with General Statutes § 14-66b on this issue. Therefore, in spite of [Modzelewski's] affidavit, [Modzelewski's Towing & Storage, Inc.] and [Modzelewski's Towing & Recovery, Inc.], and their respective bonds, will remain a part of this decision, and both bonds will be subject to invocation until such time as restitution has been made by either the [plaintiffs] or a bond payment has been made by Western Surety Company . . .

" The court concluded that there was sufficient evidence in the record to support the hearing officer's determination that both Modzelewski's Towing & Storage, Inc., and Modzelewski's Towing & Recovery, Inc., were involved in this matter.

The plaintiffs claim on appeal that the hearing officer's "inclusion [in these proceedings] of [Modzelewski's Towing & Recovery, Inc.] is not supported by substantial evidence on the whole of the record." The plaintiffs argue that Modzelewski's Towing & Recovery, Inc., is a separate licensee, with a separate fleet of wreckers and is located in a separate municipality. The plaintiffs also argue that "[t]he photographs [of the accident scene], particularly one of a heavy duty wrecker showing a Danbury decal, connect [Modzelewski's Towing & Storage, Inc.]—as opposed to [Modzelewski's Towing & Recovery, Inc.]—to the tow [at issue]."

First, we note that the hearing officer found that there was no evidence submitted by the plaintiffs that they complied with § 14-66. As noted herein, § 14-63-36c (c) of the regulations requires in relevant part that "[a] copy of each towing bill or invoice containing the information required pursuant to section 14-66b of the general statutes shall be given to the customer upon payment of the bill." Section 14-66b provides in relevant part: "Each owner of a wrecker registered pursuant to subsection (c) of section 14-66 shall keep and maintain a record stating the following information: (1) The registration number of each motor vehicle towed or transported and the registration number of each wrecker used to tow or transport such motor vehicle . . . ." Modzelewski acknowledged that the invoice given to Sentry did not comply with § 14-66b in that it did not indicate which wreckers were used at the scene of the accident at issue. Accordingly, there was no documentary evidence to support Modzelewski's testimony that none

of the wreckers used for the tow at issue was registered to Modzelewski's Towing & Recovery, Inc.

Moreover, even if we assume the truth of the plaintiffs' factual assertions, they are not dispositive of the issue of whether there was substantial evidence in the record to support the hearing officer's finding that Modzelewski's Towing & Recovery, Inc., was involved in the tow at issue. As noted, in declining to dismiss Modzelewski's Towing & Recovery, Inc., from the administrative proceedings, the hearing officer relied on the invoice given to Sentry and the check paid to and presumably cashed by the plaintiffs, and the fact that those documents seem to use the corporate names of the entities interchangeably or to use names that are not formally affiliated with either entity.

We disagree with the plaintiffs' assertion that the commissioner "all but conceded this when [he] stated that there is 'no documentation on the record that names [Modzelewski's Towing & Recovery, Inc.] as a participant in this matter.' " This argument misses the mark. The documents cited by the hearing officer also do not name Modzelewski's Towing & Storage, Inc. That fact obviously does not mean that Modzelewski's Towing & Storage, Inc., was not involved in the tow at issue. On the basis of the documentation relied on by the hearing officer and the lack of documentary evidence to support the plaintiffs' contention that Modzelewski's Towing & Recovery, Inc., was not involved in the tow at issue, there was substantial evidence from which it reasonably can be inferred that both of the plaintiffs were involved in the tow at issue.

The judgment is affirmed.

In this opinion the other judges concurred.